Roy WELLS *v.* STATE of Arkansas

5437                                                446 S. W. 2d 217

Opinion delivered October 20, 1969

[Rehearing denied November 24, 1969]

*Hobbs & Longinotti,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Roy Wells, appellant herein, was charged with the crime of Murder in the First Degree, and the Garland County Circuit Court appointed counsel for Wells shortly after his arrest. A plea of not guilty was entered, and on the morning of the trial date, these attorneys learned that fourteen members of the regular petit jury panel had not been called as prospective jurors, the court having instructed the clerk not to call the regular members of the petit jury panel who served as jurors in the case of the *State* v. *Tollett,* a first degree murder case, which had been tried approximately one week prior to the date set for the trial of Wells. After the jury was impaneled, but prior to the commencement of the trial, a conference between court and counsel was held in chambers, the court advising that this action had been taken because of the fact that three of the fourteen jurors (two alternates being included) who heard the Tollett case, had expressed an opinion to the court after the trial of that case, indicating that a different verdict might have been arrived at if the case had been tried again. Tollett had received a two year sentence for voluntary manslaughter, and the court received the definite impression that these jurors meant, if the case had been subsequently tried, they would have given Tollett considerably more time. The trial judge stated that the Wells case was similar to the Tollett case, and that the court's action had been taken as a precautionary effort to see that Wells received a fair and impartial trial. Counsel for the defense then objected to the refusal of the court to call the members of the regular panel who had served on that case, stating the ground of objection as follows:

"On the ground that such an arbitrary exclusion would deny the defendant his rights under the law and deny him access to the right to have those persons who sat on the case of *State* vs. *Tollett* as jurors in the defendant's present case about to be tried."

The motion was denied, defense counsel noting their exceptions to the ruling. On trial, Wells received a sentence of twenty-one years. The alleged error was brought forth in the motion for new trial, and after that motion was overruled by the court, an appeal was granted. Only one point is relied upon for reversal, viz:

"The court committed prejudicial and reversible error in arbitrarily advising the clerk of the court not to summons any of the jurors or alternates who had sat as jurors in the case of *State* vs. *Tollett* tried approximately one week prior to the present case."

It might be stated that there is no contention on the part of appellant that the fourteen regular jurors were excused because of any bias or prejudice on the part of the court, the good faith of the court not being questioned; nor is it asserted that any biased juror sat on the case. It is simply argued that the action of the trial court was beyond its power or jurisdiction, and that the defendant had the right to accept or challenge, either for cause or by peremptory challenge, any or all of the regular members of the jury selected by the jury commission.

We do not agree. The statutes providing for the selection of jurors and relied upon by appellant, Ark. Stat. Ann. § 39-216 through § 39-223 (Repl. 1962), contain no language consistent with appellant's argument.[1] There is no *absolute* right entitling a defendant to accept or reject individual jurors from the total regular

---

[1]Actually, appellant was provided with a full panel of twenty-four regular jurors, the record reflecting that a special panel had been called and sworn at the Tollett trial. This panel then became a part of the regular panel.

panel. This is shown by our decisions in *Pate v. State*, 152 Ark. 553, 239 S. W. 27, and *Hallum v. Blackford*, 202 Ark. 544, 151 S. W. 2d 82, and cases cited therein. The holding in those cases (and the cases they cite) was that the court did not abuse its discretion in not making available all of the members of the regular panel. Appellant's answer to those cases is, in effect, that justification was shown for the court's action, while in the case before us, the action of the court was arbitrarily taken. We need not reach that question in disposing of this litigation.

In *Trotter and Harris v. State*, 237 Ark. 820, 377 S. W. 2d 14, this court pointed out that we had many times held that an accused did not have the right to the services of any particular juror, and that a defendant is not in a position to complain of the composition of the jury if he did not exhaust his peremptory challenges. We said:

"Under Arkansas law [Ark. Stat. Ann. § 43-1922 (1947)], a defendant in a capital case is given twelve peremptory challenges, and, in the instant case, appellants only used eight peremptory challenges. Throughout the years, no rule of procedure has been more consistently adhered to than the rule that a defendant cannot complain of the composition of the jury if he does not exhaust his challenges. In *Benton v. State*, 30 Ark. 32, decided in 1875, Chief Justice English pointed out that this rule had stood as a precept of criminal practice in this state, for a period of over 22 years. In a long line of cases, we have consistently upheld the rule to the present time. A cursory examination of our cases reveals over thirty-five criminal cases in which this rule has been cited and adhered to. [Citing cases.]"

Admittedly, appellant did not exhaust all of his peremptory challenges. He is thus in no position to raise the question which he endeavors to present on this appeal.

Because the peremptory challenges were not exhausted, we do not reach the issue of whether the trial court abused its discretion in refusing to summons the fourteen members of the regular panel who had previously been excused by the court.

Affirmed.

Byrd, J. dissents.

Conley Byrd, Justice, dissenting. In disagreeing with the majority, I do so on the basis of the statutory scheme set up by law for selection and challenge of jurors

In reviewing our constitutional and statutory provisions, it will be observed that the people of this State have taken detailed pains to provide a method of selecting jurors. By this method they did not leave it to the trial court to pick the jurors but rather removed it one step from him by requiring the selection of jury commissioners, Ark. Stat. Ann. § 39-201 (Repl. 1962). Ark. Stat. Ann. § 39-208 (Repl. 1962) provides:

"The commissioners shall also select from the electors of said county, or from the area constituting a division thereof where a county has two [2] or more districts for the conduct of circuit courts, not less than twenty-four (24) nor more than thirty-six (36) qualified electors, as the court may direct, having the qualifications prescribed in Section 39-206 Arkansas Statutes 1947 Annotated to serve as petit jurors at the next term of court; and when ordered by the court, shall select such other number as the court may direct, not to exceed twelve [12] electors, having the same qualifications, for alternate petit jurors, and make separate list of same, specifying in the first list the names of petit jurors so selected, and certify the same as the list of petit jurors; and specifying in the other list the names of the alternate petit jurors so selected, and certi-

fying the same as such; and the two [2] lists so drawn and certified, shall be enclosed, sealed and indorsed 'lists of petit jurors' and delivered to the court as specified in Section 39-207, Arkansas Statutes 1947, Annotated for the list of grand jurors. [Crim. Code, § 403;. . . ."]

The method of selecting the jurors before the court is set forth in Ark. Stat. Ann. § 43-1903 (Repl. 1964) as follows:

"In a prosecution for felony, the clerk, under the direction of the court, shall draw from the jury box the names of twelve [12] petit jurors, who shall be sworn to make true and perfect answers to such questions as may be asked them touching their qualifications as jurors in the case on trial, and each juror may be examined by the State and cross-examined by the defendant, touching his qualification. If the court decide he is competent, the State may challenge him peremptorily or accept him, then the defendant may peremptorily challenge or accept him. If not so challenged by either party, he shall stand as a juror in the case, and each of the twelve [12] jurors shall be examined and disposed of in like manner. If any of said jurors are disqualified or challenged, the clerk shall draw from the box as many more as may be required, and as often as may be required, until the jury shall be obtained, or the whole panel exhausted. [Crim. Code, § 193; . . .]"

The challenges allowed by statute are set forth in the following statutes:

"Ark. Stat. Ann. § 43-1910 (Repl. 1964). *Challenge defined.*—A challenge is an objection to the trial jurors and is of two kinds:

First. To the panel.

Second. To the individual juror. [Crim. Code, § 199; . . ..]

"Ark. Stat. Ann. § 43-1911 (Repl. 1964). *Challenge to panel.*—A challenge to the panel shall only be for substantial irregularity in selecting or summoning the jury, or in drawing the panel by the Clerk. [Crim. Code, § 201; . . .]

"Ark. Stat. Ann. § 43-1912 (Repl. 1964). *Sustaining challenge to panel, effect.*—Where the challenge is sustained on the ground of irregularity in selecting or summoning the jury, all the standing jurors shall be excluded from the trial jury, and it shall be composed of persons summoned by the sheriff, or other officer appointed by the court for that purpose; if sustained because of irregularity in drawing the panel, all the names of the standing jury shall be replaced and another panel drawn. [Crim. Code, § 202; . . .]

"Ark. Stat. Ann. § 43-1913 (Repl. 1964). *Individual juror, challenge to.*—The challenge to the individual juror is:

First. For cause.

Second. Peremptory.

[Crim. Code, § 203; . . .]

"Ark. Stat. Ann. § 43-1914 (Repl. 1964). *When challenge taken.*—It must be taken before he is sworn in chief, but the court, for a good cause, may permit it to be made at any time before the jury is completed. [Crim. Code, § 204; . . .]"

"Ark. Stat. Ann. § 39-226 (Repl. 1962). *Interrogation of prospective jurors.*—In all cases, both civil and criminal, the court shall examine all prospective jurors under oath upon all matters set forth

in the statutes as disqualifications. Further questions may be asked by the court, or by the attorneys in the case, in the discretion of the court. [Init. Meas. 1936, No. 3, § 16, Acts 1937, P. 1384; . . .]"

"Ark. Stat. Ann. § 43-1921 (Repl. 1964). *Peremptory challenges for state.*—The State shall be entitled to ten [10] peremptory challenges in prosecutions for offenses punishable by death or life imprisonment, to six [6] peremptory challenges in all other prosecutions for felony, and to three [3] peremptory challenges in the prosecutions for misdemeanor. [Init. Meas. 1936, No. 3, § 17, Acts 1937, P. 1384; . . .]

"Ark. Stat. Ann. § 43-1922 (Repl. 1964). *Peremptory challenges for defendant.*—The defendant shall be entitled to twelve [12] peremptory challenges in prosecutions for offenses punishable by death or life imprisonment, to eight [8] peremptory challenges in all other prosecutions for felony, and to three [3] peremptory challenges in prosecutions for misdemeanor. [Init. Meas. 1936, No. 3, § 18, Acts 1937, p. 1384; . . .]"

"Ark. Stat. Ann. § 43-1925 (Repl. 1964). *Separate Challenges.*—The challenges of either party need not be all taken together, but separately, in the following order;

First.   To the panel.

Second.   To the individual juror for general disqualification.

Third.   To the individual juror for implied bias.

Fourth.   To the individual juror for actual bias.

Fifth.   Peremptory.

. [Crim. Code, § 217; . . .]''

As I read the foregoing statutes they recognize that a defendant has two objections or challenges, that is, the first challenge is to the panel, and the second challenge is to the individual jurors. By Ark. Stat. Ann. § 43-1913, *supra,* the challenge to the individual jurors is first for cause and second, peremptory. Consequently I conclude that the peremptory challenge goes to the individual juror and not to the panel. Furthermore it appears to me that it is a harsh rule to say to a defendant who must select a jury from a ''stacked deck'' that in your efforts to obtain as fair a trial as possible from the ''stacked deck'' you have waived your objections to the stacking of the deck because you did not exhaust all of your peremptory challenges. See *Clinton* v. *Englebrecht,* (U. S. 1892) 13 Wal. 434, 20 L. ed. 659.

Assuming that the regular panel consisted of 36 jurors and the alternate panel of 12 comprised a cross-section of the community, the prejudice to the defendant here can easily be demonstrated by the action of the court in refusing to call 14 of the regular panel who had shown a tendency to be lenient in homicide cases. The abstract of the record here does not show the nature of the homicide involved but from common experience we know that some individuals are strong on the protection of the home and are inclined to give little or no punishment to the man who kills his wife's paramour. Other jurors who strongly believe in the organized labor movement are reluctant to be stern where the decedent had a reputation of being a strike breaker. These examples are only a few of the many factors that go into the make-up of a jury and the reasons for peremptory challenges. Therefore, since the alternate panel had been called in the trial of *State* v. *Tollett* and, assuming that the regular panel consisted of 36, we find that there existed on the regular panel a total of 48 jurors. When the trial court struck 14 who had shown a tendency to be lenient with defendants in homicide cases there re-

mained only 34 jurors. When we consider that the State has 10 peremptory challenges and the defense 12 peremptory challenges we can readily see that if none of the jurors were excusable for cause that the defendant must take 12 of the remaining 34 jurors—*i. e.,* assuming that the State had exercised its 10 peremptory challenges, the defense had exercised 10 of its peremptory challenges and that 10 of the jurors had been selected, defendant would be in the position of having 4 jurors remaining, two of whom he would have to select. When he selects the best two of the remaining four by not exercising his peremptory challenges, are we not penalizing him in holding that because he did not exercise all of his peremptory challenges he has waived the defense to the action of the trial court which "stacked the deck" against him in the first place?

In making this dissent, fairness calls for me to state that the honorable trial judge involved in this case apparently was trying to obtain justice for the defendant rather than injustice and that the majority opinion is in accord with our prior adjudicated cases. However, since the possibility exists for trial courts to summarily remove so-called "conscientious objectors", see *Witherspoon* v. *Illinois,* 391 U. S. 510, 20 L. Ed 2d 776, 88 S. Ct. 1770 (1968), or otherwise give the State more than its 10 peremptory challenges, I dissent for the reasons stated in *Byler* v. *State,* 210 Ark. 790, 197 S. W. 2d 748 (1946). We there pointed out that notwithstanding the fact that the trial judge acted in the utmost good faith we were unwilling to establish the precedent. For these reasons I would reverse and remand the case for trial by a jury panel selected by law rather than by a jury panel from which the trial court had culled certain jurors