## STROUD *v.* STATE.

## Opinion delivered September 28, 1925.

1.  WITNESSES—IMPEACHMENT—INTEREST IN CASE.—In a prosecution of W. for arson, where it was the theory of the prosecution that defendant and his brothers conspired to have W. burn a certain storehouse, and one of defendant's brothers testified in his behalf, it was competent, showing the interest of such witness, to prove that he had signed an appearance bond to secure W.'s release from jail, and that witness had given the check of another brother to another surety on such bond to induce the latter to sign it.

2.  CRIMINAL LAW—CONSPIRACY—EVIDENCE.—Where it was the theory of the State in a prosecution for arson that defendant and his brothers had employed W. to burn the house in question, and that W. had employed another to set the building on fire, and that defendant was party to an arrangement whereby the sum of $150 was advanced to W. to pay for the burning of the house, it was competent to show that W. was arrested the next day after the fire with $150 on his person.

3.  JURY—SELECTION—WAIVER OF OBJECTION.—Selection of a jury in a felony case not according to the statutory method will not be ground for reversal where the method used was adopted at defendant's request, and where the defendant does not show that any person was permitted to serve on the jury against whom he desired to exercise a challenge.

Appeal from Franklin Circuit Court, Ozark District; *James Cochran,* Judge; affirmed.

*June P. Clayton, J. E. Chambers, Benson & Benson* and *Hays, Priddy & Rorex,* for appellant.

*H. W. Applegate,* Attorney General, and *Darden Moose,* Assistant, for appellee.

SMITH, J. This is the second appeal in this case, a former conviction having been reversed in an opinion reported in 167 Ark. 505. The testimony on the present appeal is essentially the same as that on the former appeal except that certain testimony which was held inadmissible on the former appeal was not offered at the trial from which the present appeal comes.

It was the theory of the prosecution that appellant and his brothers had conspired to have a certain store-

house burned and had employed one T. B. Wackerly to effect that purpose.

Walter Stroud, one of the brothers, was called as a witness for appellant, and in his cross-examination it was developed that witness and W. D. Stroud, another brother, who were jointly indicted with appellant, had signed an appearance bond to secure the release of Wackerly from jail, and that witness had given the check of his brother, W. D. Stroud, for a thousand dollars to another surety on Wackerly's bond to induce the surety to sign it and to indemnify him. This testimony was objected to on the ground that it was the independent act of an alleged co-conspirator after the consummation of the conspiracy.

When this testimony was admitted, counsel for appellant stated to the court that the jury should be admonished that the testimony did not prove that appellant Floyd Stroud had anything to do with the burning, and the court replied: "Certainly not. It goes only to the credibility of the witness." The court did not admit this testimony as a part of the conspiracy, but admitted it as tending to show the interest of the witness in the matter, and it was competent for this purpose. The testimony was elicited on the cross-examination of the witness, and was competent for the purpose for which it was admitted, that is, of showing the interest of the witness in the case.

It was the theory of the prosecution, as appears from the opinion on the former appeal, that appellant and his brothers had employed Wackerly to burn the house in question, and that Wackerly, in turn, had employed another person to set the building on fire, and Wackerly had been advanced $150 in money with which to make the promised payments. Testimony was offered on the part of the State that Wackerly was arrested in Fort Smith the day after the fire, and that he had $150 in money on his person at the time.

It is insisted that this testimony was incompetent for the reason that the conspiracy—if there was one—had been consummated before the arrest was made; but we

do not agree with counsel in this contention. The testimony was competent as tending to prove the existence of the original conspiracy and as a part of it. If there was a conspiracy to burn the house, the payment and the disbursement of the $150 was an essential part of it, was in fact the consideration inducing the participation of all the conspirators except that of the Stroud brothers, by whom the payment was alleged to have been made, and it was the State's theory that appellant, Floyd Stroud, was a party to the arrangement whereby Wackerly had been paid the $150 found on his person.

It is urgently insisted that reversible error was committed in impaneling the jury, and upon this question we copy the following recitals from the transcript.

In impaneling the jury to try the cause the following occurred:

"After 38 men had been questioned on their *voir dire* as to their qualifications by both the State and defendant, and found to be qualified, each side retired from the court room, and when they returned the following occurred. *Court*: Gentlemen, hand in your lists to the clerk. *Counsel for Appellant*: We said that we would pass on the jury as we did before. We are ready to challenge. It is the duty of the State to make their challenges or acceptances first. We just want to look over our list and then come back and pass on them, and as soon as the prosecuting attorney has passed on each juror we will pass on that juror. *Court*: Gentlemen, I understood that you wanted a struck jury. I asked you how you wanted to pass on them, and you said: 'Qualify all of them and then let you make your challenge.' The court then addressed to the prosecuting attorney the following question: 'Did you have any understanding with them?' And the prosecuting attorney replied: I didn't have any agreement, either this time or any other time, but I am willing to do as the court says about it. *Counsel for Appellant*: We are not trying to get out of any agreement. The court must have misunderstood what the defendant asked for. I never did think about the defendant

being required to pass on them before the State did. *Court*: I asked you how you wanted to pass on them, and you said get the list ready and take it out and pass on them. Now you come in and ask that the State be required to pass on each juror first. *Counsel for Appellant*: We especially request that the State be required to make her challenges first. *Court*: We have gone over that a number of times. Save your exceptions. *Counsel for Appellant*: We save our exceptions. *Court*: At the beginning of this trial when the jury was sworn to answer questions the attorneys for the defendant asked that they have a struck jury. The court agreed and permitted them to qualify thirty-eight men and then permitted them to take lists and spend thirty or forty minutes in making their challenges. When the defendant's attorney returned into court, they then demanded that the jury be called one at a time and the State be required to pass on each juror first and the defense second. This the court refused to do, and the defendant saved his exceptions. The court then directed that the lists be passed in to the clerk, and the jury made up from the lists on which the State and the defendant had exercised their challenges.''

We must take as true the facts recited by the trial court as to the agreement made in the case. No bill of exceptions was made by bystanders or otherwise to show that the facts in regard to the impaneling of a struck jury as stated by the court were not true, and that this was done at the request of the defendant.

It may be said that this jury was not made in the manner provided by law and that the practice pursued is not one to be approved. But what was done was done at the request of the defendant. He probably conceived it to be to his advantage to have thirty-eight jurors qualified before any challenges were exercised, and this favor had been granted him. Had the jury been made in the manner provided by law, it would have been the duty of the State to have first exercised its challenges, but the

jury was not being made in that manner, and the statute had been departed from at the request of the defendant.

We have copied in full the recitals of the transcript on the subject, and it does not appear that defendant was deprived of the right to exercise the full number of challenges given him by law, or that any person was permitted to serve on the jury against whom he desired to exercise a challenge.

It is not clear why thirty-eight jurors, and no more, were qualified, but this appears to have been the number agreed upon. As we understand the record, the State and defendant were each provided with a list of the thirty-eight jurors who had been qualified, and the defendant was allowed thirty or forty minutes to consider the challenges he would make, and the challenges were exercised both by the State and by the defendant by indicating on their respective lists the names against which the right of challenge was desired to be exercised. These lists were handed to the clerk, and from the persons whose names were not challenged the jury was completed.

We say again this is not a practice to be approved, as it is not the method of impaneling juries in felony cases provided by the statute, and we would reverse the judgment of conviction for that reason except for the facts: (a) It was done at defendant's request. (b) The defendant does not show that any person was permitted to serve on the jury against whom he desired to exercise a challenge. And for these reasons appellant is in no attitude to complain of the irregular proceedings.

We find no prejudicial error, so the judgment is affirmed.