## Ronald CRUTCHFIELD v. STATE of Arkansas

5607                                471 S.W. 2d 361

Opinion delivered October 11, 1971

*Anderson & Slagle,* for appellant.

*Ray Thornton,* Attorney General; *James A. Neal,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Ronald Crutchfield was convicted, in the Garland County Circuit Court, for the unlawful possession of cannabis on February 19, 1971. He was sentenced to five years in the penitentiary and was fined $2,000. On appeal to this court he relies on the following points for reversal:

> "The charges pending against defendant should be reduced to a misdemeanor and remanded back to

the lower court in accordance with the provisions of Act 590 of 1971.

The lower court erred in admitting evidence seized from defendant's car before defendant had been arrested and without a search warrant, and in overruling defendant's motion to suppress.

The lower court erred in directing that 18 jurors' names be drawn from the jury selection box where statutory procedure clearly calls for 12 jurors to be first selected."

The facts are briefly these: About 30 days prior to June 17, 1970, police officers found two small patches of cannabis growing in an uncultivated field near a burned-out house place out in the country from Hot Springs. The cannabis was being cultivated and the police officers kept the area under surveillance during daylight hours for several days. On several occasions, when the officers would arrive at the scene early in the morning, they found that the plants had already been watered and cultivated prior to their arrival. Finally on June 17, 1970, the sheriff of Garland County, with one of his deputies, arrived at the scene and found Ronald Crutchfield's automobile parked in the drive of the old house place and about 50 feet from the growing cannabis.

Sheriff Canada and Deputy Land testified that when they first saw Crutchfield's automobile parked near the cannabis, Crutchfield was near the rear of his automobile and that he went to the front of his automobile and casually picked up a pellet rifle which was laying across the hood of the automobile. Sheriff Canada testified that he recognized Crutchfield as a former police officer on the Hot Springs force and that he had known Crutchfield for a number of years. He says that he asked Crutchfield what he was doing in the area, and that Crutchfield replied that he was hunting. He says that he asked Crutchfield to surrender the pellet gun, and that Crutchfield did so without resistance. He says that as he passed by Crutchfield's automobile, he noticed a

small hand spade on the front seat of Crutchfield's automobile and also noticed a water sprinkling can, together with a spout, on the backseat of the automobile and an Igloo-type water cooler sitting on the floor of the automobile between the seats. He testified that he took the keys from the switch in Crutchfield's automobile, opened the trunk of the automobile and found some leaves of cannabis in a cellophane package and also a package of seed later identified as the seed of cannabis. He says that he then arrested Crutchfield for possession of Cannabis.

Sheriff Canada, as well as other officers who arrived at the scene following the arrest, testified that the growing cannabis had very recently been watered and cultivated; that there was still a small amount of water in the sprinkling can and water cooler, and that the spading trowel had moist dirt on it.

Mr. Crutchfield testified that he had stopped at the old house place to do some target practice with his pellet gun; that the sheriff placed him under arrest immediately and before the automobile was searched; that he knew nothing of the cannabis growing nearby, and that he has no idea how the leaves and seed of the cannabis got into the trunk of his automobile. He testified that the spading trowel belonged to him and was used in connection with raising worms for fish bait; that the sprinkling can and water cooler were used to carry water for the leaky radiator on his automobile. He testified that he loaned his automobile to various relatives and other people. He testified that his automobile had been in two separate garages for repairs, during which time it had remained out of his possession for several weeks. He testified that he also kept the automobile parked on the street in front of his house with the keys in the switch.

Crutchfield insists that this court should reduce the charges against him to a misdemeanor and remand to the trial court for further procedure under the provisions of Act 590 of 1971. Crutchfield was charged, tried, convicted and sentenced under the provisions of the Uniform

Narcotic Drug Act, Ark. Stat. Ann. §§ 82-1001—82-1023 (Repl. 1960). Cannabis is defined, under the Act, as including "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, or preparation of such plant, its seeds, or resin. . ." Cannabis is classified as a "narcotic drug" under the Act. Possession of cannabis is made unlawful under the Act and the penalty for first offense is fixed by statute (§ 82-1020) as a fine of $2,000 and imprisonment for not less than two or more than five years.

Act 590 of the Acts of Arkansas (The Uniform Controlled Substances Act) became effective on April 17, 1971; cannabis is a controlled substance under the Act, and Art. IV, § 1 (c) of the Act provides as follows:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, * * *. Any person who violates this subsection is guilty of a misdemeanor. . ."

Section 7 of Art. IV authorizes the court to place a defendant upon probation without entering a judgment of guilt upon plea of guilty or conviction for first offenders; and Art. VI, § 1, (a) (b) (c) of the Act provides as follows:

"Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted is similar to one set out in Article IV of this Act, then the penalties under Article IV apply if they are less than those under prior law.

Civil seizures or forfeitures and injunctive proceedings commenced prior to the effective date of this Act are not affected by this Act.

All administrative proceedings pending under prior laws which are superseded by this Act shall be continued and brought to a final determination in accord with the laws and rules in effect prior to the effective date of the Act. Any substance controlled under prior law which is not listed within Schedules I through V, is automatically controlled without further proceedings and shall be listed in the appropriate schedule."

We do not agree with Crutchfield's contentions under his first point. In the very recent case of *Shinsky* v. *State,* 250 Ark. 614, 466 S. W. 2d 909, Shinsky was convicted for the possession of narcotic drugs and was sentenced to four years imprisonment. His conviction was affirmed by this court in an opinion delivered May 10, 1971. On May 21, 1971, Shinsky filed his petition for rehearing pointing out the provisions of Act 590 of 1971, and arguing that this court should reduce the charge to a misdemeanor and remand for a new trial under the provisions of Act 590. The petition for rehearing was denied by per curiam order on June 7, 1971, (Vol. 250 Ark. Reports), in which we said: "The grounds of petitioner address themselves to the Governor."

We have not overlooked the cases cited by Crutchfield in support of his contention. *Hamm* v. *Rock Hill,* 379 U. S. 306, involved a series of lunch counter "sit in" cases under the federal Civil Rights Act of 1964 in which the defendants had been convicted under state law making it an offense to enter a place of business after having been warned not to do so, or to refuse to leave immediately after having entered thereon. The question in *Hamm* was what effect the Civil Rights Act had on cases pending, as well as convictions had, under state laws prior to the enactment of federal statute. The court in *Hamm* v. *Rock Hill* in effect held that the federal Civil Rights Act "substitutes a right for a crime," but does not work a *technical* abatement as in other federal cases. The gist of the holding in *Hamm* is stated as follows:

"Future state prosecutions under the Act being unconstitutional and there being no saving clause in the Act itself, convictions for pre-enactment violations would be equally unconstitutional and abatement necessarily follows."

The Washington case of *State* v. *Zornes,* 475 P. 2d 109, involved statutory interpretation. After stating the common law rule on abatement, the case turned on legislative intent in the wording of the statute. The case of *U. S.* v. *Schooner Peggy,* 5 U. S. (1 Cranch) 37, cited by Crutchfield, had to do with a condemnation of a French vessel with cargo as a prize taken on the high seas in compliance with the federal statute permitting such seizures during war. After the seizures, and while the case was still pending in the U. S. courts, a treaty was entered into between the United States and France under which the United States agreed to return "Property captured and not yet definitely condemned. . ."; so the question there was whether or not the Schooner Peggy and her cargo were "definitely condemned" under the statute and within the meaning of the articles of the convention.

Subsection 1 (c) of Art. IV, Act 590 makes it unlawful for any person knowingly or intentionally to possess a controlled substance in violation of the Act and the Act provides that any person who violates it is guilty of a misdemeanor. The Act does not provide a penalty for its violation, but does provide under § 7 that upon plea of guilty or conviction, a violation under subsection (c) "the court without entering a judgment of guilt and with the consent of the accused, *may* defer further proceedings and place him on probation upon terms and condition." (Emphasis added).

In *Shinsky* v. *State, supra,* the appellant had been convicted and his appeal was pending when Act 590 became law. His two co-defendants had not been brought to trial when Act 590 became law and Shinsky argued on his petition for rehearing that his case should be reversed and remanded to the trial court, and that he should be entitled to a trial on a misdemeanor under

Act 590, the same as his co-defendants would be entitled. We concluded on petition for rehearing that Shinsky's contentions addressed themselves to the clemency power of the Governor and not to the appellate jurisdiction of this court. We so hold in the case at bar as to Crutchfield's first point.

In support of his second point Crutchfield argues that the evidence taken from his automobile should have been suppressed at his trial because it was obtained without a search warrant and not incidental to a lawful arrest. We find this contention to be without merit. The evidence is not contradicted that the cannabis plants had very recently been watered and cultivated, and that Sheriff Canada observed the cultivating trowel as well as the water sprinkler and empty water cooler can inside the automobile prior to his search of the automobile. In *Harris v. U. S.*, 390 U. S. 234, the Supreme Court of the United States stated: "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence."

In the case at bar, we are of the opinion that the sheriff had reasonable cause to suspect that Crutchfield had cannabis concealed in his automobile when he observed Crutchfield beside his automobile containing cultivating and watering implements, when the implements were in plain view and the automobile parked within 50 feet of the recently cultivated and watered cannabis plants. We conclude, therefore, that the sheriff had reasonable grounds and probable cause to make the warrantless search of Crutchfield's automobile trunk for cannabis.

As to Crutchfield's third and last point, the record is not clear as to the exact procedure followed by the trial court in the selection of the jury. It is true, as argued by Crutchfield, that Ark. Stat. Ann. § 43-1903 (Repl. 1964) provides as follows:

"In a prosecution for felony, the clerk, under the direction of the court, shall draw from the jury box

the names of twelve [12] petit jurors, who shall be
sworn to make true and perfect answers to such
questions as may be asked them touching their
qualifications as jurors in the case on trial, and
each juror may be examined by the State and cross-
examined by the defendant, touching his qualifica-
tions. If the court decide he is competent, the State
may challenge him peremptorily or accept him, then
the defendant may peremptorily challenge or accept
him. If not so challenged by either party, he shall
stand as a juror in the case, and each of the twelve [12]
jurors shall be examined and disposed of in like man-
ner. If any of said jurors are disqualified or challeng-
ed, the clerk shall draw from the box as many more as
may be required, and as often as may be required,
until the jury shall be obtained, or the whole panel
exhausted."

After both the state and the defendant announced
that they were ready for trial, the trial court requested
the clerk to call the roll of the jury. Whereupon colloquy
between Crutchfield's attorney and the trial judge oc-
curred as follows:

"MR. ANDERSON: Your Honor, the defendant
would request that the court follow section 43-1903,
that being twelve jurors called in lieu of eighteen
and that the jury be filled as the jurors are elimi-
nated by cause or by peremptory challenge.

THE COURT: Well, there will be twelve jurors
seated in the box. The extra six are the ones who
would be called next in event of challenges; so you
still have the original twelve. I think that is suf-
ficient compliance with the statute."

Thereupon the seats in the jury box were apparently
filled by the first 12 jurors whose names were called.
On voir dire one of these jurors was excused for cause
and Mr. Coxie White was apparently called in his place,
and the attorneys were directed to exercise their peremp-
tory challenges. Apparently five jurors were peremptorily
challenged but the record does not reveal how many of
these challenges were exercised by the state and how

many were exercised by the defendant. Eight jurors were seated following the peremptory challenges, and the clerk was directed to call the names of ten more jurors. One of the additional jurors was excused for cause on voir dire and at this point the record appears as follows:

> "THE COURT: I believe the State would have three additional peremptory challenges, if I'm not mistaken, and the defense would have one additional. Would you please give counsel a list.
>
> (The clerk did so). (Counsel retired from the courtroom and returned giving list to clerk. A conference between the Clerk and the Court.)
>
> THE COURT: The jury will be composed of the following: James Fitzhugh Tucker; Phil Shook; Frank Stitt; Jimmy Alford; Thelma Trussell; Dal Satterlee; Grace Couch; Doris Jordan; Raymond Clinton; Louis Maus; Edna Alford and Leta Whitney.
>
> The rest of you may be excused, and will you all take the chairs I've assigned to you in that order, please."

Again the record is not clear as to whether the state or the defendant exercised their final peremptory challenges.

Ark. Stat. Ann. § 43-1903 (Repl. 1964) is simple and clear on the selection of jury in felony cases. While this court does not approve of the selection of a jury in felony cases in a manner other than that provided by statute, especially when the method used is objected to by the accused, we are unable to see wherein the appellant could have been prejudiced in the exercise of his challenges to the first 12 names called when he knew the names of the next six jurors who would be called to take the place of those challenged among the first 12 names called.

In *Stroud* v. *State,* 169 Ark. 348, 275 S. W. 669, by agreement between the prosecuting attorney and the defendant's counsel, 38 jurors were called and qualified after which the state and the defense exercised their peremptory challenges and the jury was made up from the remaining jurors who had not been eliminated by the peremptory challenges. The defendant was convicted and on appeal to this court he assigned reversible error in the manner by which the jury was selected. In affirming the conviction this court pointed out that there was nothing in the record indicating that the defendant was deprived of the right to exercise the full number of challenges given him by law, or that any person was permitted to sit on the jury against whom he desired to exercise a challenge, and in conclusion in that case, we said:

> "We say again this is not a practice to be approved, as it is not the method of impaneling juries in felony cases provided by the statute, and we would reverse the judgment of conviction for that reason except for the facts: (a) It was done at defendant's request. (b) The defendant does not show that any person was permitted to serve on the jury against whom he desired to exercise a challenge. And for these reasons appellant is in no attitude to complain of the irregular proceedings."

Of course, in *Stroud* the defendant had *requested* that the jury be selected in the manner employed and in the case at bar Crutchfield objected to the calling of 18 names rather than 12. However, in the case at bar, Crutchfield has shown no prejudice to his right growing out of the manner in which the jury was selected, for here, as in *Stroud,* he does not show that any person was permitted to serve on the jury against whom he desired to exercise a challenge. As a matter of fact, the record in the case at bar does not show that Crutchfield eventually exercised all of his peremptory challenges. *Wells* v. *State,* 247 Ark. 386, 446 S. W. 2d 217.

Finding no reversible error the judgment of the trial court is affirmed.

Affirmed.

Byrd, J., dissents.