Larry Ray HUTCHERSON v. STATE of Arkansas

CR 76-177            558 S.W. 2d 156

Opinion delivered December 12, 1977
(In Banc)

*James M. Thweatt,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. This is an appeal from a Monroe County Circuit Court conviction sentencing Larry Ray Hutcherson to life imprisonment without parole for the capital murder of Ron Brooks — an Arkansas state policeman.

Just before noon on February 27, 1975, three men escaped from the Monroe County jail in Clarendon. The victim, Ron Brooks, chased the escapees into an alley in Clarendon, fired his gun and ordered them to stop. One of the escapees continued to run and was captured later. The other two were detained by Brooks and handcuffed. After the escapees were handcuffed and during or after a search of their persons, Brooks was killed. Larry Ray Hutcherson, one of the escapees, was convicted of the capital felony murder for killing a policeman acting in the line of duty.

The factual disputes in this case concern which of the

two escapees killed Brooks, and which one of three pistols was used to fire the fatal shot. Several guns were introduced into evidence. There was evidence that indicated that the weapon of the jailer, which was discovered missing at the time of the escape, was used to kill Brooks.

Throughout the trial the two escapees were distinguished by witnesses as being either the tall or the short one, or the darker as opposed to the lighter-complected one. The state's evidence showed that Hutcherson was taller and lighter-complected than the other escapee.

Two eyewitnesses said they saw one of the men shoot and kill Brooks. One eyewitness observed the shooting from her residence which bordered on the alley. The other eyewitnesses observed the incident from a street adjoining the alley. These witnesses' testimony also amounted to an identification of Hutcherson.

In reviewing the evidence on appeal, we must view it in the light most favorable to the appellee and affirm if there is any substantial evidence. *Downs* v. *State,* 259 Ark. 510, 532 S.W. 2d 427 (1976). Here there is substantial evidence to sustain the conviction.

The appellant raises nine issues on appeal which will be discussed separately.

## I.

The trial court refused to grant a motion *in limine* which would have prohibited the state from offering evidence that Hutcherson was involved in a jail break immediately prior to the killing.

We find no prejudice in the court permitting this evidence to be introduced. Brooks was killed while apprehending Hutcherson and another man who had just escaped from the Monroe County jail in Clarendon. The escape was an inseparable part of the charge in this case. The evidence was used to help prove that Brooks was a policeman acting in the line of duty at the time he was murdered. Therefore, the evidence was properly admitted. *Harris* v. *State,* 239 Ark. 771,

394 S.W. 2d 135 (1965); *cert. denied,* 387 U.S. 964 (1965).

## II.

The trial court denied the appellant's request to sequester the jury.

The appellant made a timely motion to sequester the jury and argues on appeal that a small town the size of Clarendon would make it difficult, if not impossible, to have an impartial jury as required by Art. 2, § 10 of the Arkansas Constitution.

The decision to sequester or allow the jury to separate is within the sound discretion of the court. Ark. Stat. Ann. § 43-2121 (Repl. 1964); *Nail v. State,* 231 Ark. 70, 328 S.W. 2d 836 (1959). We find no evidence in the record to indicate in any way that the court abused its discretion. The court repeatedly advised the jury to not discuss the case, read any newspapers, watch television or listen to the radio. It was the burden of the appellant to show that the jurors were improperly influenced by being permitted to separate or by being subject to exposure. *Newton v. State,* 189 Ark. 789, 75 S.W. 2d 376 (1934).

## III.

The trial court refused the appellant's motion for the state to produce and pay for a transcript of the appellant's previous trial.

Hutcherson's first trial ended in a hung jury on June 19, 1975. The case was reset for trial on December 3, 1975, but was continued at the request of defendant until February 23, 1976. The motion to produce the transcript of the previous trial was not filed until about three days before the February trial date. The trial judge ruled that the motion was untimely.

Counsel for Hutcherson argued that he had told the trial judge and the prosecuting attorney in December he was going to file such a motion. However, it was never conclusively shown that Hutcherson was an indigent or that the transcript of the previous trial was necessary for his defense. Further-

more, the motion was not timely filed.

Counsel for Hutcherson was the same at both trials. Counsel did not file a request for payment as appointed counsel after the first trial, indicating that he had been paid by Hutcherson's parents. Although the motion for the transcript stated Hutcherson was an indigent, no evidence was offered to prove indigency.

The right to a transcript paid for by the state is based on the premise that an indigent cannot afford it. *Roberts* v. *LaValee,* 389 U.S. 40 (1967). The state should not bear the cost of a transcript if the defendant is able to pay for that transcript.

As to the necessity of the transcript, counsel for the defense was given access to all signed documents by the witnesses that were in the possession of the state. The testimony of one of the witnesses had been transcribed at the request of the state. On these bare facts we cannot say that Hutcherson was denied his rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Finally, the motion was not timely filed.

## IV.

The court denied the defendant's motion for a change of venue.

A timely motion for change of venue was filed on behalf of Hutcherson. After hearing witnesses for both the state and Hutcherson, the trial court denied the motion.

Essentially the argument is that this case is controlled by our decision in *Hildreth* v. *State,* 214 Ark. 710, 217 S.W. 2d 622 (1949). In *Hildreth,* three appointed defense counsel swore that they had questioned numerous residents in the county and every one of them thought the defendant could not obtain a fair trial in that county; but, these citizens refused to sign affidavits because of public sentiment. The lawyers then offered to testify, but the court refused to hear them.

The facts in *Hildreth* are hardly comparable to the facts

in this case. Counsel for Hutcherson filed an affidavit stating that he could not obtain affidavits required for change of venue. Nine witnesses were then called and questioned by counsel. Most of the nine were called by the defense. Not a single witness testified that Hutcherson could not receive a fair trial. There was no evidence at all offered that a diligent effort had been made to obtain the required affidavits; nor did counsel for Hutcherson offer to testify about his efforts. The court did not abuse its discretion in denying this motion. A bare allegation of local prejudice is not enough to warrant a trial court ordering a change of venue.

## V.

Appellant claims the trial court limited his attorney's *voir dire* of prospective jurors.

The appellant's attorney asked a prospective juror a confusing question; the state objected to the question; the juror answered; the debate continued; and, the allegations of error pertain to the trial court's eventual ruling. The question and answer were:

> Q. If they presented evidence to you trying to prove to you that he was guilty beyond a reasonable doubt, would you also expect him to prove to you some evidence that he is innocent?

> STATE'S ATTORNEY: I am going to object.

> A. I think you got me wrong there. I think that is the reason I answered the question wrong. I think he does have to testify to prove his innocence.

A considerable amount of discussion transpired between counsel and the trial court and the record reflects that the judge and the lawyers disagreed over the meaning of the question and answer. The trial court after considerable argument did not limit counsel for Hutcherson but decided that the question was confusing and misleading. The court stated:

> I am going to not limit your question, but I am going to

limit the form of the question in the future to not ask a double barrelled question which I think that one was.

We agree with the trial court's decision. The question was misleading. Counsel was evidently trying to determine if the juror understood the presumption of innocence. However, he asked whether the juror felt Hutcherson must prove his innocence because the state was trying to prove its case beyond a reasonable doubt. The question dealt with issues, and the trial court was merely telling defense counsel to structure his questions so a layman could more easily grasp the fine distinctions the question, as phrased, presented. This ruling did not limit counsel's ability to *voir dire* on the presumption of innocence, therefore, no prejudice is shown.

Furthermore, the trial judge was extremely lenient with counsel for Hutcherson and the prosecuting attorney in their questions to prospective jurors.

## VI.

The trial court after the state had rested its case denied an oral motion that the transcript of a witness' testimony be produced.

This argument is identical to the argument made in the third allegation of error. Again, the motion was not timely made. After the state had rested its case and after direct and cross-examination of a witness who had testified at the previous trial, defense counsel asked for the transcript of her testimony to be reproduced before proceeding. The motion was denied. Nevertheless, the appellant's attorney conducted a thorough cross-examination of this witness, obviously discrediting her testimony to some degree.

Counsel for Hutcherson argues that this eyewitness who had viewed the killing from her window adjacent to the alley, did not at the prior trial directly identify Hutcherson as the man shooting the policeman. However, during this trial she did point out Hutcherson as the man who shot the policeman.

The trial court was deeply troubled by this motion. Dur-

ing a discussion of the motion there was some disagreement about what the witness had actually testified to at the first trial. Finally, the court ruled that the motion was untimely made.

We cannot find that the trial court abused its discretion in denying this motion after the witness had testified. This was the second request made for a transcript. The case had been tried once and this same witness was called both times. Perhaps this was a greater reason why defense counsel should have anticipated the need for the transcript prior to trial and made a timely motion for the transcript rather than wait until during the second trial to request a delay and a production of the transcript of the witness' prior testimony.

## VII.

The appellant moved for mistrial when it was learned that the policeman's father talked to one or more members of the jury during a recess.

It was called to the attention of the court during the recess that one of the jurors was seen talking to the father of the deceased policeman. The court immediately called the father to the witness stand and questioned him about any conversation that may have taken place. The court was satisfied by the answers of the father that nothing had been said which would prejudice a juror. We have before us only the argument that such a meeting would in and of itself constitute prejudicial error. Mistrial is a drastic remedy granted only when an error cannot otherwise be cured. *Foots* v. *State,* 258 Ark. 507, 528 S.W. 2d 134 (1975). We cannot say from the sparse record before us that such a meeting alone was prejudicial error. Therefore, we find no abuse of discretion by the trial court in denying the appellant's motion for mistrial.

## VIII.

An investigator's file was left in the witness room where the jurors were placed for a period of time and the appellant upon learning about the file moved for a mistrial.

The file contained considerable information about the

charge, and the investigation of the crime. It also had Hutcherson's name on a tab affixed to the folder.

The court did not poll the jury as to their knowledge of the existence of the file or whether any of them had looked at the file. We feel the trial court should have allowed defense counsel to question the jurors about the file.

Rule 606 of the Uniform Rules of Evidence provides in part:

> . . . a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

We feel that this matter could not have been cured by an admonition by the court and should have been pursued at the request of defense counsel. Therefore, we remand this case to give Hutcherson the opportunity to examine the jurors about their possibly having viewed the file, and any prejudice that may have resulted.

## IX.

Hutcherson was not allowed to be present when the record in this case was reconstructed from the court reporter's notes. The tapes of the first trial were destroyed by a fire at the court reporter's home.

In *Butler v. State,* 261 Ark. 369, 549 S.W. 2d 65 (1977), Butler made a request to be present when the record was reconstructed and we ordered that the trial court should have granted that request. Because no such request was made in this case, we find no error.

In summary, we have reviewed all of the allegations of error and find merit in only one of them. Subject to the outcome of the proceedings to determine prejudice of the jurors, we find no error in the record.

Remanded for proceedings not inconsistent with this opinion; otherwise, affirmed.

BYRD and HOWARD, JJ., not participating.