Clay Anthony FORD *v.* STATE of Arkansas

CR 81-104                                                  633 S.W.2d 3

Supreme Court of Arkansas
Opinion delivered May 10, 1982
[Rehearing denied June 7, 1982.]

*Ken Cook,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was convicted of the crime of capital felony murder in Mississippi County Circuit Court, on a change of venue from Crittenden County. Punishment was set at death by electrocution. Appellant argues twelve points for reversal, which will be set out and discussed separately. However, we do not find reversible error in any of them and affirm the action of the trial court.

The facts in this case reveal that Sergeant Glen Bailey of the Arkansas State Police encountered the appellant driving at a highly excessive rate of speed. The officer crossed over the highway median in order to give chase and radioed for assistance. Appellant was stopped at a blockade on the exit ramp from Interstate Highway 55 into the city of Marion, Arkansas. Two police cars were in front of him and he stopped a short distance before reaching the first car. A uniformed trooper started walking toward the appellant who began to back up but discovered the original officer had blocked him in from behind and was approaching him on foot. Appellant stopped his car, got out and fired point blank into Sergeant Bailey's chest critically wounding him. The officer died soon thereafter as a result of this wound. The appellant attempted to escape on foot but was ap-prehended a short time later in a nearby house. At the scene the officers determined that the vehicle appellant had been driving was stolen. They found a number of stolen articles in the vehicle. They further learned that appellant was an escapee from the Tennessee Department of Correction where he had been serving time for a number of felony convictions.

The incident was given wide publicity resulting in the court granting appellant's motion for a change of venue from Crittenden County to Mississippi County.

Over the objections of the appellant the fact that he was an escapee and serving time on the other sentences was allowed to be introduced. Also, it was shown that the automobile was stolen and that various items found in the car belonged to other people. The owners were allowed to identify their property during the course of the trial. The information was also challenged and the more standard defenses normally presented in capital felony trials were argued.

We will separately discuss the arguments on appeal.

## I.

## THE TRIAL COURT ERRED IN DENYING APPEL-LANT'S MOTION TO QUASH THE INFORMATION.

The motion to strike the indictment was based upon the Eighth Amendment prohibiting cruel and unusual punishment. This argument has been presented to the court in many cases, and we have consistently ruled that our death penalty statute is constitutional. *Westbrook* v. *State*, 265 Ark. 736, 580 S.W.2d 702 (1979); *Ruiz and Van Denton* v. *State*, 265 Ark. 875, 582 S.W.2d 915 (1979); *Swindler* v. *State*, 264 Ark. 107, 569 S.W.2d 120 (1978); and *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977). Appellant contended that the overlapping provisions of Ark. Stat. Ann. § 41-1501 (Repl. 1977) with Ark. Stat. Ann. §§ 41-1502 and 41-1503 (Repl. 1977) were arbitrary and discriminatory. We have also held constitutional these particular statute sections in *Wilson* v. *State*, 271 Ark. 682, 611 S.W.2d 739 (1981), and in *Cromwell* v. *State*, 269 Ark. 104, 598 S.W.2d 733 (1980), where it was stated " . . . we find no constitutional infirmity in the overlapping of the two sections, because there is no impermissible uncertainty in the definition of the offenses."

## II.

## THE TRIAL COURT ERRED IN DENYING APPEL-LANT'S MOTION CHALLENGING THE DEATH QUALIFICATION VOIR DIRE OF PROSPECTIVE JURORS.

The "death qualified" jury was approved by the United States Supreme Court in *Witherspoon* v. *Illinois,* 391 U.S. 510 (1968). Since *Witherspoon* we have approved this procedure in many cases. See *Ruiz and Van Denton* v. *State,* supra; *Collins* v. *State,* supra; and *Westbrook* v. *State,* supra.

## III.

## THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO QUASH THE JURY PANEL.

The jury panel was selected by the jury wheel through a random selection process. The selection was by computer process from the list of registered voters of a voting district within Mississippi County. Additionally, prior to this trial, 300 names were again selected using the same process of jury wheel random selection. The court requested that 150 of the jurors report on the first day. Only 54 appeared. Five or six of these were black. The trial court excused a considerable number of jurors prior to the trial date. Eighteen were excused because they were 65 or older and did not wish to serve; 16 stated they were in bad health; and 12 others listed various hardships which caused the court to excuse them prior to the trial date. Several had moved from the district and a few of them were dead. There was nothing about this process which indicated an intent not to have a fair cross-section of the population of the district represented by the panel. Appellant's attorney made the statement that the state had a habit of excusing black jurors peremptorily. The panel as selected was all white. Although this could give the impression of discrimination, a closer examination reveals the selection was not in violation of the rule set out in *Swain* v. *Alabama,* 380 U.S. 202 (1965), and followed by us in *Williams* v. *State,* 254 Ark. 799, 496 S.W.2d 395 (1973). Appellant did not use the process utilized in *Waters & Adams* v. *State,* 271 Ark. 33, 607 S.W.2d 336 (1980), wherein we held the system used therein was discriminatory. There is no proof in the record that there was a conscious effort to exclude black jurors. Statistics concerning the number of blacks in Mississippi county were not presented until the appeal brief was filed. The random selection process used in this case does not guarantee that a proportionate cross-section of the

community will serve on the jury nor is there a guarantee that any proportionate number of appellant's race will be seated on the jury. *Swain* v. *Alabama,* supra; and *Williams* v. *State,* supra. If it had been shown that it was the practice of the state to automatically exclude black jurors the result may well have been different, however there was no proof as to this point.

## IV.

## THE TRIAL COURT ERRED BY REQUIRING DEFENDANT TO VOIR DIRE THE PROSPECTIVE JURORS BEFORE THE STATE WAS REQUIRED TO ACCEPT OR STRIKE.

Appellant sought to have the prospective jurors voir dired separately. However, the court found that there was not enough room in the courthouse to utilize this process. Although appellant thought the library in the courthouse would be adequate for this purpose, the court exercised its discretion in rejecting this suggestion.

In *Clark* v. *State,* 258 Ark. 490, 527 S.W.2d 619 (1975), we held it reversible error to require a defendant to examine all of the jurors drawn from the panel each time before the state was required to either accept or reject a juror, it being felt that this process would afford an unfair advantage to the state. However, it appears that the appellant waived the requirements of Ark. Stat. Ann. § 43-1903 (Repl. 1977) by making the suggestion that this process would be satisfactory. It may be noted that this process was utilized at the request of defense counsel after consultation with appellant. We do not overlook the fact that appellant stated he still did not waive his objection to questioning the jurors other than individually. However, the agreement to use this method was made only after consulting with the appellant, and we do not find it to be reversible error. Also, only ten of the twelve authorized peremptory challenges were exercised by appellant. See *Crutchfield* v. *State,* 251 Ark. 137, 471 S.W.2d 361 (1971); and *Stroud* v. *State,* 169 Ark. 348, 275 S.W. 669 (1925).

## V.

## THE TRIAL COURT ERRED IN DENYING APPEL-LANT'S MOTION TO PROHIBIT JURY DISPERSAL.

It is hard to understand why this argument is presented when the appellant admits that such matters were within the discretion of the trial court. Although it may be preferable to sequester the jury, it is a matter upon which the trial court must decide. The burden of proof to show that the appellant did not receive an impartial trial because of failure to sequester the jury is upon the appellant. This burden was not met. Ark. Stat. Ann. § 43-2137 (Repl. 1979); *Nail* v. *State*, 231 Ark. 70, 328 S.W.2d 836 (1959); *Hutcherson* v. *State*, 262 Ark. 535, 558 S.W.2d 156 (1977).

## VI.

## THE TRIAL COURT ERRED BY ALLOWING THE MENTION OF APPELLANT'S PRIOR FELONY CON-VICTIONS DURING THE STATE'S OPENING STATE-MENT.

The statement made by the state was:

Officer Brackin further continuing his investigation determined that at the time this occurred the defendant, Clay Anthony Ford, was wanted for an escape from the Memphis Community Service Center where he was serving a sentence of — completing a sentence of three years on convictions of burglary in the third degree, grand larceny and burglary in the second degree.

The court had taken into consideration the appellant's motion in limine prior to the commencement of the trial and had ruled that the state would be permitted in its case in chief to show that appellant was a prior convicted felon in regard to those convictions which he was serving at the time of his escape. Additionally, the court later held that these convictions were allowable for the purpose of showing intent. The court had made it clear that the motion in limine was granted as to any other convictions which the appellant may

have had. Since the proof showed that the appellant was serving time for these particular convictions prior to his escape, it is proper to refer to them in order to show motive or intent pursuant to Arkansas Uniform Rules of Evidence, Rule 404 (b). Relevancy of evidence is within the trial court's discretion and absent a showing of abuse of that discretion its decision will be affirmed. *Hamblin* v. *State*, 268 Ark. 497, 597 S.W.2d 589 (1980). The admissibility of evidence must necessarily be decided on a case by case basis. Intent can seldom, if ever, be shown by direct evidence and may be proven only from circumstantial evidence. *Smith* v. *State*, 264 Ark. 874, 575 S.W.2d 677 (1979). We do not interpret these offenses to be excluded under the theory set forth in *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954). We still adhere to the principle that prior convictions cannot be introduced for the purpose of showing that the accused was a bad person. We hold to the rule that evidence of other crimes may not be introduced merely for the purpose of showing the accused to be a man of bad character likely to commit the crime charged. *Umbaugh* v. *Hutto*, 486 F.2d 904, cert. denied 94 S. Ct. (1978), 416 U.S. 690 (8th Cir. Ark. 1973). Since evidence of appellant's other crimes was introduced for a proper purpose, there was no prejudicial error in allowing this material to be introduced.

## VII.

## THE TRIAL COURT ERRED WHEN IT COMMENTED UPON THE EVIDENCE.

At the beginning of the trial the court stated to the jury, "Ladies and gentlemen, I feel that a word of caution might be in order at this time in regard to that type and nature of evidence which has been admitted." " . . . any prior convictions or escape from the State of Tennessee, of course, has no bearing upon the question of whether or not this defendant did in truth and fact shoot and kill Sgt. Glen Bailey." Appellant objected to the trial court's comment and at his request the trial court struck its previous remark. Even if the words of caution uttered by the judge had been improper, it is apparent that the court's prompt striking of the statement cured any impropriety. We do not find this to

be a violation of Art. 7 § 23 of the Constitution of Arkansas prohibiting judges from commenting upon the evidence. There is no doubt that a trial judge is in a position of great stature in the eyes of the jury and should be extremely cautious in both conversation and candor throughout the course of a trial. Without having any intention whatsoever and perhaps unconsciously the trial court could prejudice the right of an accused by making comments upon the evidence or appearing to act in a manner favoring one side or the other. However, we do not find that such is the case here.

## VIII.

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED A SERIES OF STATE'S WITNESSES TO IDENTIFY STOLEN PROPERTY TAKEN IN THE COMMISSION OF OTHER CRIMES UNRELATED TO THIS CHARGE AND FOR WHICH THE APPELLANT HAD NOT BEEN CHARGED.

Exercising its discretion, the trial court, over the appellant's objection, permitted evidence of stolen credit cards and other articles found at the scene of the slaying, including the vehicle, to be introduced as evidence. As we stated earlier, Rule 404 (b), Arkansas Uniform Rules of Evidence, allows the judge to admit evidence that goes to show motive or intent. It is obvious the appellant would not have wanted to be apprehended with stolen articles in his possession. Therefore, we cannot say the trial court abused its discretion in allowing the introduction of this evidence for the purpose of shedding light upon the intent of the accused. Perhaps it is unfortunate that as a side effect of the introduction of this evidence the jury could imply that appellant had committed these other crimes. However, the trial court obviously ruled that its probative value outweighed the danger of unfair prejudice. *Martin* v. *State*, 258 Ark. 529, 527 S.W.2d 903 (1975); and *Grigsby* v. *State*, 260 Ark. 499, 542 S.W.2d 275 (1976).

## IX.

THE EVIDENCE REGARDING PREMEDITATION

AND DELIBERATION WAS INSUFFICIENT AS A MATTER OF LAW AND THE TRIAL COURT ERRED BY DENYING APPELLANT'S MOTION FOR DIRECTED VERDICT.

The jury was properly instructed by the court that in order to find the appellant guilty of capital felony murder they must find that he acted with a premeditated and deliberated purpose; that he had a conscious object to cause the death; that he formed that intention before acting; and, that he must have weighed in his mind the consequences of a course of conduct as distinguished from acting upon sudden impulse without the exercise of reasoning power. The matter of premeditation and deliberation, absent a confession, can only be proven by circumstantial evidence. This state of mind may be formed on the spur of a moment. The fact that appellant alighted from his car with his pistol in his hand and fired point blank into the approaching officer's chest is rather strong evidence of his intent. We stated in *Westbrook* v. *State*, supra, "premeditation and deliberation are not required to exist for any particular length of time and may be formed almost on the spur of a moment."

## X.

THAT DEFENDANT WAS PREJUDICED BY THE STATE'S IMPROPER CLOSING ARGUMENT AND THE TRIAL COURT'S DENIAL OF DEFENDANT'S MOTION FOR A MISTRIAL.

During the state's closing arguments reference was made concerning the motive for killing the officer and in that connection the state made the statement that appellant was trying to avoid apprehension for "other crimes, the escape, the burglary, the theft and possession of stolen property." Appellant timely objected to the mention of these crimes but the court denied his motion for a mistrial. The court did instruct the state not to dwell at length upon this aspect of the case. All of these items had been mentioned both at the beginning of the case and further along in the proof in chief. Therefore, they were not prejudicial as mentioned in the closing argument. Closing argument

should be confined to the questions in issue, the evidence introduced and all reasonable inferences and deductions that may be drawn therefrom. *Brewer* v. *State*, 271 Ark. 254, 608 S.W.2d 363 (1980). We have previously stated that these particular crimes were admissible under Rule 404 (b). Therefore, it was not error to mention them in the closing argument.

Appellant contends that the trial court abused its discretion when, after admitting that the court had not heard a certain portion of the argument, the court refused to listen to the reporter's transcript in order to determine what had occurred. The court also denied a motion for a mistrial at this point. A review of the transcript shows that the judge inquired as to what was said and it turned out to be the remark of the prosecuting attorney relating to the other crimes. Neither side disputed that that was the portion of the proceeding which the court did not hear. Consequently it was not prejudicial error to refuse to listen to the tape.

## XI.

## THE TRIAL COURT ERRED BY ALLOWING THE STATE TO INTRODUCE EVIDENCE OF APPELLANT'S PRIOR CONVICTIONS DURING THE PENALTY PHASE OF THE TRIAL.

The prior convictions admitted during the penalty phase were convictions for larceny, burglary and receiving and concealing stolen property. These are not the same crimes that were mentioned earlier but are convictions for which the appellant had been paroled or released. We agree with the appellant that as stated in *Williams* v. *State*, 274 Ark. 9, 621 S.W.2d 686 (1981), the trial court should not submit to a jury a defendant's conviction for burglary during the penalty phase of a trial. We held that in order for an offense to be admissible as an aggravating circumstance pursuant to Ark. Stat. Ann. § 41-1303 (Repl. 1977) the felony committed must include the use or threat of violence to another person, or the creation of substantial risk of death or serious physical injury to another person. Sometimes a burglary could include this risk. We still adhere to the rule.

It was error for the court to allow evidence of prior crimes which did not involve the use or threat of violence or create substantial risk of death or serious physical injury to another person as an aggravating circumstance. Neither were these prior felonies proper for the purpose of anticipating a showing of lack of prior convictions as a mitigating circumstance. We faced a similar situation in the case of *Miller* v. *State,* 269 Ark. 341, 605 S.W.2d 430 (1980), wherein we stated:

> We think it a better practice, and less confusing to the jury, for the circuit judge to omit from submission any aggravating or mitigating circumstances that are completely unsupported by any evidence, and we take this opportunity to direct the circuit judges of Arkansas to hereafter allow this alternate procedure. If there is any evidence of the aggravating or mitigating circumstances, however slight, the matter should be submitted to the jury. Of course, counsel may object to the determination of the trial court the same as they may object to any other form of verdict.

Therefore, it was the duty of the trial court to omit the mitigating circumstance relating to appellant's lack of prior criminal history. The jury could not have found it to exist and the appellant would not have these prior felonies presented before the jury. The fact that it was shown that appellant was an escapee from the Tennessee prison where he was serving time for felony convictions had already foreclosed the possibility of the jury finding no significant history of prior criminal activity. However, in the present case the jury did not find appellant had committed the aggravating circumstance of having a prior felony involving the use of or threat of violence to another person or involving the creation of substantial risk of death or serious physical injury to another person. Neither did the jury find the mitigating circumstance that appellant had no significant history of prior criminal activity. Under the circumstances of this case we do not find the error to have been prejudicial.

## XII.

THE TRIAL COURT ERRED BY DENYING WITH-
OUT A HEARING APPELLANT'S MOTION FOR NEW
TRIAL AND SUBPOENA DUCES TECUM AS A RE-
SULT OF MEDIA COVERAGE OF TRIAL PROCEED-
INGS IN THE COURTROOM WITHOUT CONSENT
OF APPELLANT AND APPELLANT'S COUNSEL.

Appellant filed a motion for new trial based on a
number of grounds. Most of the grounds were matters which
were previously raised and ruled upon during the course of
the trial. One other ground emphasized was that the trial
court allowed TV and media coverage at the sentencing
stage of the trial without the consent of appellant or
appellant's counsel. In reviewing the record it is unclear
how much media coverage this trial was given. Appellant's
objection was made at the sentencing phase of the trial and
thus it is with that point which we deal.

The court, after the case had been submitted to the jury
and a verdict returned fixing appellant's penalty at death by
electrocution, asked the appellant, "Do you have any legal
cause to show at this time why sentence should not be
passed?" At this point counsel for appellant requested that
the court be closed ". . . insofar as the press is concerned."
The trial court denied the request. In the case of *Shiras and
Arkansas Gazette Co.* v. *Britt,* 267 Ark. 97, 589 S.W.2d 18
(1979), we held that public trials are guaranteed by law,
therefore the request that the court be closed to the press was
properly denied. However, assuming that the appellant's
counsel was referring to TV coverage, the record does not
reveal the extent to which the proceeding was videotaped or
covered by the television media. Canon 3 (A) (7) of the Code
of Judicial Conduct prevents cameras in the courtroom
without the consent of the accused. See 271 Ark. 358 (1980).
Our rule has been somewhat relaxed since the date of this
trial. The rule was not placed into effect to be ignored by the
courts. It is possible that the rights of an accused could be
prejudiced by intrusion by members of the media. There-
fore, safeguards have been adopted by Canon 3 (A) (7) of the
Code. A willful disobedience of this Canon would, no doubt,

be dealt with in an appropriate manner which could go so far as to cause a retrial of the case or result in other action by this court. Since the trial of the appellant had been completed and the only thing left to do was to sentence him and only one sentence was to be imposed, we cannot hold that there was any prejudice to the appellant as a result of coverage by the media without prior approval.

The trial court considered appellant's motion for a new trial and denied it on the grounds (1) that some of the matters had been previously considered and ruled upon, (2) that there was no timely objection in regard to media coverage of the trial, and (3) that appellant's motion for new trial failed to comply with Rule 36.22 of the Ark. R. Crim. Pro. which states that a motion for new trial " . . . should include a statement that the movant believes the action to be meritorious and is not offered for the purpose of delay." In light of the previous discussion and considering the trial court's reasoning, we cannot find that the trial court abused its discretion in failing to grant appellant a new trial.

## XIII.

### SEARCH FOR OTHER ERRORS.

In accordance with Ark. Stat. Ann. § 43-2725 (Repl. 1977) and Rule 11 (f) of our rules we have reviewed the record in this case regarding all objections upon which the trial court ruled adversely to the appellant but which were not included in the brief herein. We have found no overruled objections which amount to reversible error.

We would call appellant's attention to the fact that in a brief to this court the abstract should be done in first person and is not to be copied verbatim from the transcript. Rule 9 (d), Rules of the Supreme Court. This seems to have added to appellant's own, as well as our difficulty in coming to a full understanding of the case; however, we have proceeded with due diligence and find that the trial court should be affirmed.

Affirmed.

HICKMAN, J., dissents.

DARRELL HICKMAN, Justice, dissenting. The outcome of this trial was never seriously in doubt. Two eyewitnesses saw Clay Anthony Ford kill an Arkansas State Policeman in broad daylight, and the State had an abundance of other evidence which would justify any jury imposing the ultimate penalty. About all the defense could hope for in this case was to see that Ford obtained a fair trial. But the State, for some reason, had to go further and press its advantage. In my opinion it went too far. The jury was permitted to consider two items of evidence that were unnecessary, inadmissible and could only prejudice the jury.

First, it was unnecessary for the State to show what convictions Ford had that resulted in his imprisonment. These convictions were totally irrelevant to this case and inadmissible for any reason. Only the fact that he was an escapee who had been serving a sentence for a felony conviction was relevant. Evidently the trial court felt that such evidence went to motive. Weinstein defines motive as it applies in such instances as follows:

> Motive has been defined as 'supply[ing] the reason that nudges the will and prods the mind to indulge the criminal intent.' Two evidentiary steps are involved. Evidence of other crimes is admitted to show that defendant has a reason for having the requisite state of mind to do the act charged, and from this mental state it is inferred that he did commit the act. Evidence of another crime has been admitted to show the likelihood of defendant having committed the charged crime because he needed money, sex, goods to sell, was filled with hostility, sought to conceal a previous crime, or to escape after its commission.
> 2 WEINSTEIN'S EVIDENCE par. 404[4].

In no way can it be said evidence of what crimes the convictions were for provided Ford any motive for this crime. Only the fact that he was an escapee would be relevant to motive and that was admitted.

The State was also permitted to offer other prior convictions of Ford during the sentencing stage of the trial. These convictions were offered so the defense could not say in mitigation that Ford had no prior criminal record. These convictions were in addition to those mentioned in the opening statement by the prosecuting attorney that I addressed first. This was also prejudicial error in my judgment.

These prior convictions were not admissible as an aggravating circumstance authorized by Ark. Stat. Ann. § 41-1303 (3) (Repl. 1977) because none of them involved an element of which was the use or threat of violence, the risk of death or serious injury to another. The trial judge allowed the convictions so the jury would not find as a mitigating circumstance that the defendant had no significant history of prior criminal activity. Ark. Stat. Ann. § 41-1304 (6). In my judgment this was prejudicial error because the trial judge, when he learned of this prior criminal record, simply should not have submitted that mitigating circumstance to the jury. We held in *Miller* v. *State*, 269 Ark. 341, 605 S.W.2d 430 (1980) that the trial judge should omit any aggravating or mitigating circumstance that is completely unsupported by any evidence. We said:

> The aggravating and mitigating circumstances to be considered by the jury in all applicable cases are set out in the statute, and are therefore not worded or tailored to fit the particular facts of the case just tried. As the statute does not indicate otherwise, the circuit judges of the state have been submitting to the jury in capital murder cases all seven of the enumerated aggravating circumstances and all six of the enumerated mitigating circumstances, regardless of the inapplicability of some of them. Ark. Stat. Ann. § 41-1303 (Repl. 1977). The practice was perhaps also bolstered by our Committee on Criminal Jury Instructions, because none of the aggravating or mitigating circumstances are bracketed in the model instruction, to indicate they might be omitted. We think it a better practice, and less confusing to the jury, for the circuit judge to omit from submission any aggravating *or*

*mitigating circumstances that are completely unsupported by any evidence,* and we take this opportunity to direct the circuit judges of Arkansas to hereafter allow this alternate procedure. [Emphasis added.]

The trial judge simply should not have permitted that particular mitigating circumstance to be considered by the jury. It amounts to allowing the State to show evidence of aggravation by these prior convictions; evidence that was not admissible as an aggravating circumstance.

The majority has approved by two new methods, heretofore unknown, the injection of a defendant's previous criminal record into his trial for a separate offense. Laymen often wonder why such evidence is excluded but lawyers and judges know very well why such evidence is traditionally excluded. Because it is their role to preserve our system of justice. In *Alford* v. *State,* 223 Ark. 330, 266 S.W.2d 804 (1954), we said:

> No one doubts the fundamental rule of exclusion, which forbids the prosecution from proving the commission of one crime by proof of the commission of another. The State is not permitted to adduce evidence of other offenses for the purpose of persuading the jury that the accused is a criminal and is therefore likely to be guilty of the charge under investigation. In short, proof of other crimes is never admitted when its only relevancy is to show that the prisoner is a man of bad character, addicted to crime.

That is exactly what the State was able to do in this case.

Ford should pay for the crime he committed, but our system cannot allow him to pay a price that is not fairly set by an impartial jury considering only relevant evidence in an atmosphere devoid of passion and prejudice.

I am also disturbed by the fact that the trial court did not comply with our rule on cameras in the courtroom. There is no evidence presented to us that the defendant was prejudiced because the trial court prohibited the defendant's

attorney from obtaining the video tapes in question. Since I would reverse for other reasons, I do not reach this issue.