MILLER & GROFFO v. STATE.

4921                                      322 S. W. 2d 685

Opinion delivered April 6, 1959.

[Rehearing denied May 4, 1959]

*Robert Laster* and *Jeff Duty,* for appellant.

*Bruce Bennett, Atty. General, By Bill J. Davis, Asst. Atty. General,* for appellee.

JIM JOHNSON, Associate Justice. This is an appeal from a conviction of the offense of robbery. On March 5, 1958, appellants, Robert Miller and Tommy Groffo, drove to the home of Mr. and Mrs. Jim Sizemore, and there proposed to them that they would repair their cook stove at no cost. Mr. Jim Sizemore is 77 years old and his wife is 71 years old. Their home is on a farm three miles east of Springdale on State Highway 68. Mr. and Mrs. Sizemore are the recipients of a monthly check

from the State Welfare Department in the amount of $44.00 per month each.

On the pretext of repairing the Sizemores' cook stove, appellants attempted to close some cracks in this second hand wood stove by inserting some type of liquid cement into the seams, joints and cracks. After doing this alleged repair work, appellants then told the Sizemores that they owed them $78.60. They further told the Sizemores that they "had to pay it", that they "will have to take the old man to the boss if you don't pay", and "we will stay here until we get our money, we've got to have it." Mrs. Sizemore then gave the appellants two $20 bills and Mr. Sizemore gave them $9.00. As this was not the amount appellants told them they must have, appellants then insisted that Mr. Sizemore go with them and cash the two welfare checks that had been received that day. Appellants then took Mr. Sizemore into Springdale and there the two checks were cashed totaling $88.00. After taking the $88.00 from his hand, they then returned to the Sizemores' home. There Mr. Sizemore got out of the truck, and Robert Miller gave him $2.00 back. The total amount taken from the Sizemores was $135.00. Approximately 20 minutes after Mr. Sizemore got home, he reported the robbery to his son when he came from work. Shortly thereafter, the appellants were apprehended at a road block by the State Police, then returned to Washington County, and custody of the appellants was placed in the Washington County Sheriff's Department.

Appellants were charged by information on March 10, 1958, with the crime of robbery as defined by Ark. Stats. (1947) Section 41-3601. A trial was had on April 17, 1958, and appellants were convicted of the crime of robbery and sentenced to 10 years in the State Penitentiary. From such conviction comes this appeal.

For reversal the following three points were relied upon:

I.

The defendants cannot be guilty of robbery.

## II.

The verdict and judgment is excessive.

## III.

The testimony of Mrs. Sizemore as to her impression, without threats to base it upon, was inadmissible.

The points will be treated in the order in which they are urged.

## I.

Ark. Stats. (1947) Section 41-3601 provides:

"Robbery is the felonious and violent taking of any goods, money or other valuable thing from the person of another by force or intimidation; the manner of the force or the mode of intimidation is not material, further than it may show the intent of the offender."

The only question before this Court concerning the sufficiency of the evidence is whether intimidation or force was used in the offense that the appellants committed. If either force or intimidation was employed to obtain the money from the Sizemore couple, the requisites of the statute are met. We have held many times that if either force of intimidation is used to obtain money or other valuable goods, robbery has been committed; and both are not necessary to complete the offense. The testimony shows that the Sizemores were afraid and scared of the appellants, and the testimony was not contradicted. Taking into consideration the age of this couple, the intimidation necessary to complete the offense is not nearly so great as would be necessary to complete the offense if the victims were younger people.

We said in a similar case, *Sutton* v. *State,* 162 Ark. 438, where the argument was advanced that no intimidation was employed:

"Whenever the element of force or putting in fear enters into taking of the property and is the cause that induces the owner to part with it, the taking is robbery, *no matter how slight the act of force or the cause creating the fear may be,* nor by what other circumstances the

taking may be accompanied. It is sufficient that the putting in fear overcomes the resistance on the part of the person from whom the property is taken, and is the moving cause inducing him to part unwillingly with his property. (Emphasis supplied.)

A careful review of the record shows, we think, substantial evidence to support the jury's finding that this couple parted unwillingly with their money as the result of intimidation and fear. The statements made by the appellants that they had to have the money, threatening to take Mr. Sizemore to their boss, and other statements of a similar nature, satisfy the requirements of the statute and our prior decisions concerning the amount of intimidation necessary — especially in view of the age and physical condition of this couple — and none of the State's evidence was controverted by the appellants.

## II.

Point No. II gave us a great deal of concern. However, we are bound by the rule stated in *Hall* v. *State,* 113 Ark. 454, 168 S. W. 1122, wherein we said:

"It was the peculiar province of the jury to weigh the testimony of the witnesses, and this court is not at liberty to reduce the punishment, even though we might think it too severe."

We cannot say, in the absence of other error, that there was not any substantial evidence to support the verdict.

## III.

In order to properly discuss Point III, it is necessary that we set out additional parts of Mrs. Sizemore's testimony. She stated in substance:

Miller stated he fixed stoves; he said he would fix her stove and it would not cost a penny; Groffo then came in after he was called by Miller; he was neat and clean and did not look like a stove repair man; Miller stated that the cement would cost 12 cents an inch; the appellants then told them that they owed them $78.60; she gave them two $20.00 bills; the reason she gave the bills

to them was because the appellants told her they were going to take her husband off; they were going to take him to the boss man; the statement of the appellants scared her; she was already scared when she saw the big one come in because she did not think they were stove fixers; the appellants said that we had to get the money; that the appellants were going to stay there until they got it; she was afraid that she and her husband would make them mad; she was afraid they would hurt them in some way; they forced Jim to go with them to cash the checks; she was frightened and scared, and: the reason she gave them the $44.00 check was because she was scared not to.

In addition to the testimony as set out above, the Prosecuting Attorney asked the following questions:

"Q. Now, what did you think, if anything, Mrs. . . .?

"A. Well, I'll tell you, I just thought . . .

"Q. What was your state of mind at that time?

"A. Well, I'll tell you . . .

"Q. What impression, if any, did that make on you, what they said?

"A. I was afraid they'd kill him."

Objections were strenuously made by the defendants to these questions. The objections were overruled and exceptions were saved. Mrs. Sizemore was permitted to answer the questions.

Ordinarily, such questions as to the state of mind of a prosecuting witness would be improper. However, in this case where the statutes make intimidation or putting in fear the person robbed an element of the offense of robbery, it is proper that the state of the mind of the person robbed be proved in order to show that all the elements of the offense were present. 20 Am. Jur., Evidence, Section 335, has this to say on the question:

"The state of mind of a person, like the state or condition of the body, is a fact to be proved like any

other fact when it is relevant to the issue in the case, and the person himself may testify directly thereto.''

After a careful review of the points argued in the excellent briefs of the parties, and a diligent search of the record, we are unable to find error. Therefore, the judgment is affirmed.