Eugene Wallace PERRY *v.* STATE of Arkansas

CR 82-19                                          642 S.W.2d 865

Supreme Court of Arkansas
Opinion delivered November 15, 1982
[Rehearing denied January 10, 1983.]

*Ronald D. Harrison* of *Harrison & Hewett,* and *Stephen M. Sharum,* for appellant.

*Steve Clark,* Atty. Gen., by: *Alice Ann Burns,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. The appellant was tried in Sebastian County, Arkansas, upon change of venue from Crawford County. He was convicted of capital felony murder and sentenced to death by electrocution. The appel-

lant argues 21 points for reversal in this appeal. We will discuss each of them in the body of this opinion. We do not find any of the points argued to constitute prejudicial and reversible error.

Kenneth Staton and his daughter, Suzanne Staton Ware, were murdered during the course of a robbery of their jewelry store on September 10, 1980. On September 26, 1980, the state filed an information against Damon Peterson, a/k/a Damon Malantino, and Richard Phillip Anderson charging them with capital felony murder. The appellant was arrested in Jacksonville, Florida, on an unrelated crime. While the appellant was still imprisoned in Jacksonville, Florida, he filed a demand for a speedy trial on the Arkansas charge and was returned to Crawford County shortly thereafter. At the time of his arraignment the information was amended to show his name as Eugene Wallace Perry, a/k/a Damon Peterson, a/k/a Damon Malantino. Trial counsel was appointed for the appellant. Upon motion the appellant was granted a change of venue from Crawford County to Sebastian County, Fort Smith District.

A photo line-up, consisting of six photographs, was displayed by investigating officers to several witnesses, some of whom identified the appellant from the photos. Appellant's photograph in the line-up was one from the waist up showing him to be in a hospital bed. The other pictures were all mug shots having solid backgrounds. Upon request of the appellant a line-up was conducted and viewed by five witnesses, all of whom identified the appellant. Counsel for appellant actively supervised the line-up and positioned the appellant in the number two position. Further details of the identification process will be described in the discussion of the points argued on appeal.

All of the evidence was circumstantial. Photographs were introduced showing the bodies of the decedents on the floor of the jewelry store. They were bound and gagged and each had been shot twice in the head. A considerable amount of blood was shown in the photographs. Also, several tags which were allegedly taken from items of jewelry in the store were introduced. These tags were obtained from a camp site

on Beaver Lake and from a storage room in Fayetteville. Ruby Godwin was the only witness who placed the appellant in Van Buren on the date of the robbery. Other witnesses testified they observed the appellant, either before or after the date of the crime, at Beaver Lake, in Van Buren and Fort Smith as well as in Fayetteville.

## I. THE COURT ERRED IN REFUSING A REQUEST FOR A SECOND CHANGE OF VENUE.

The appellant filed a timely motion for a second change of venue in which he insisted that the trial be removed from the Twelfth Judicial District to some place outside the primary news coverage of Fort Smith and Van Buren. The court could have granted a change of venue to any county adjacent to Crawford County, either inside or outside of the Twelfth Judicial District. *Cockrell* v. *Dobbs, Judge*, 238 Ark. 348, 381 S.W.2d 756 (1964). However, there was no request by the appellant for a change to any specific county other than Sebastian. In any event, the matter is without merit because the record clearly shows that the jury selected was unbiased. A change of venue lies within the discretion of the trial court. If the court determines that the appellant can receive a fair trial by an impartial jury, there is no prejudice regardless of the location of the trial. *Foster* v. *State*, 275 Ark. 427, 631 S.W.2d 7 (1982). An examination of the record in this case reveals that each of the jurors stated they could give the appellant a fair trial and that they would be guided by the instructions of the trial court. Therefore, we do not find that under these circumstances the trial court abused its discretion.

## II. THE COURT ERRED IN DENYING APPELLANT'S REQUEST FOR A HANDWRITING EXPERT AT STATE EXPENSE.

Again, this is a matter that lies within the discretion of the trial court. *Ruiz and Van Denton* v. *State*, 265 Ark. 875, 582 S.W.2d 915 (1979). The record indicates that certain writings were used for the purpose of showing that the appellant had used the name of Damon Peterson while he was in the Crawford County area. There was no attempt

made to show that the writing on any particular items in evidence was actually the handwriting of the appellant. We have held that it is a matter within the discretion of the trial court in refusing to provide a defendant with an unnamed expert to rebut the state's expert testimony evidence. *Adams v. State,* 276 Ark. 18, 631 S.W.2d 828 (1982). In the present case the state did not use expert testimony to establish the handwriting as that of appellant. The appellant was linked to these items of evidence by identification testimony only. Several other witnesses identified the appellant as one known as Damon Peterson while he was in the area. Testimony concerning the evidence purportedly bearing the signature of Damon Peterson was received without objection thus this issue is precluded from review on appeal. *Wicks* v. *State,* 270 Ark. 781, 606 S.W.2d 366 (1980). Under the facts presented under this argument we do not find that the trial court abused its discretion.

## III. THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS IDENTIFICATION TESTIMONY.

We agree with appellant's argument that the state may not use in-court testimony and identification by witnesses whose testimony has been tainted by unconstitutionally conducted or impermissibly suggestive procedures. *Sims* v. *State,* 258 Ark. 940, 530 S.W.2d 182 (1975). We have held that the judge must look to the totality of the circumstances in such cases to determine if there is a likelihood of mis-identification. *James & Elliott* v. *State,* 270 Ark. 596, 605 S.W.2d 448 (1980). Reliability of evidence is the linchpin in determining its admissibility. *Manson* v. *Brathwaite,* 432 U.S. 98 (1977), and *Matthews* v. *State,* 275 Ark. 1, 627 S.W.2d 20 (1982). We reverse the trial judge in such matters only if we find it was clearly erroneous. *Beed* v. *State,* 271 Ark. 529, 609 S.W.2d 898 (1980). Reliability of eye witness identification is normally a question for the jury, however, fundamental fairness of identification procedures addresses itself to the trial court as a matter of law under *Beed.*

Several witnesses testified at the suppression hearing concerning the photographic and physical line-ups which were considered by the various witnesses. Witness Jeffcoat

testified that the appellant had a blond, frizzy-headed look with black eyebrows and a black mustache. After viewing the physical line-up and picking out appellant, the witness stated to the prosecutor that he hoped he had selected the right person and the prosecutor allegedly stated that he believed Jeffcoat had picked the right man. It was improper for the prosecutor to make such a statement but it was made after the witness had identified the appellant. Therefore, the error is not prejudicial in this case. From the facts it does not appear that the line-up was used to crystallize this witness's memory so that he could later be used to make an in-court identification. Another witness, the widow of one of the victims, picked the appellant from the physical line-up because she believed he was one of two persons who was in their jewelry store a few days before the murder. All of the witnesses to the physical line-up were apparently kept in one room prior to viewing the line-up. The evidence indicates that the witnesses did not discuss the matter of identifying anyone in the line-up, however, it still would have been a better practice to separate the witnesses prior to viewing the line-up.

It is true some of the witnesses' testimony was vague and general in nature. However, this is a matter which addresses itself to the jury.

Witness Linda Godwin testified at the suppression hearing. She was unable to identify the appellant in the photographic line-up. She expressed some reservations about her identification of the appellant in the physical line-up. She further stated that she had seen appellant's picture in the newspaper before viewing the line-up. She could not remember whether the appellant had a mustache but she did remember he had a beard. This was in direct contradiction with descriptions other witnesses had given about the appellant.

Witness Parr identified the appellant in the photo show-up. He did not hedge on his testimony and was very positive in his identification of the appellant as the man who had been in his store for about 15 minutes during the first part of September 1980. Parr also testified that the men

he saw in his store, which is located near the store which was robbed, were in their mid-20s and slim but not skinny and about 5′ 10″ tall. His testimony at the trial was essentially the same. His testimony was to the effect that the dark haired man (appellant) did not have a mustache. His description was, to say the least, not identical with that of any other witness.

Witness Carson testified at the suppression hearing. He testified that he recognized the appellant in the photographic line-up and that it appeared the man had lost 26 pounds since he observed him nine or ten months prior to the suppression hearing. Also, he had observed appellant's picture in a newspaper.

Gilford Heckathorn did not participate in the line-up procedure or testify at the suppression hearing. Heckathorn claimed to have rented a storage building to the appellant for storing a motorcycle and other items. At the trial he positively identified an alternate juror as the man to whom he rented the building. There was no objection to this testimony or to that of Grant Cummins and we will not dwell upon their testimony as any error has been waived. Grant Cummins' testimony was most positive at the trial, but it was later revealed that he examined the photographic line-up at the request of the prosecuting attorney during a break in the trial while the appellant was still seated at the counsel table in view of the witness. This was highly improper on the part of the prosecuting attorney but the witness's testimony was introduced without objection. As to the photo identification, it appears that witnesses Ginn, Etier, Carson, Parr and Jeffcoat identified the appellant and witnesses Godwin and Staton were unable to do so.

It must be kept in mind that the appellant apparently changed his outward appearance often. He appeared as a curly haired blond and as a light colored long-haired individual, as well as having straight dark hair in the physical line-up. However, it appears that his eyebrows were always dark and when he had a mustache it was dark. The various witnesses observed the appellant at different times and he may well have appeared somewhat different to each

of them. On the other hand, it is not unusual for several witnesses to view the same individual at the same time and come up with different descriptions. An accused is not entitled to have a line-up in which all the participants are identical. Sometimes the accused may even have a distinctive appearance which none of the other participants possess. *McCraw* v. *State*, 262 Ark. 707, 561 S.W.2d 71 (1978); *James & Elliott* v. *State*, supra. Generally speaking, the reliability of identification testimony can adequately be tested on cross-examination. *Harrison* v. *State*, 276 Ark. 469, 637 S.W.2d 549 (1982). We held in *Sims* v. *State*, 258 Ark. 940, 530 S.W.2d 182 (1975):

> ... before an error of constitutional proportions may be considered harmless, it must be harmless beyond a reasonable doubt, and we must be able to say that untainted evidence of the defendant's guilt was overwhelming before we can even consider whether the error is harmless.

Also see *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975). The rule as established in *United States* v. *Wade*, 388 U.S. 218 (1967), and followed by this court in *Montgomery* v. *State*, 251 Ark. 645, 473 S.W.2d 885 (1971), is that when a line-up is conducted for the purpose of crystallizing a witness's identification without the presence of the accused's counsel, the state must establish by clear and convincing evidence that the subsequent courtroom identification by a witness who identified the accused in such a line-up was based upon independent observation rather than upon the constitutionally infirm line-up procedure. Although the evidence against the appellant in this case is all circumstantial, it is by no means all dependent upon the identification testimony of any particular witness. We have held that in-court identification can be held inadmissible as a matter of law only if, after viewing the totality of the circumstances, it can be said that the identification was patently unreliable. *McCroskey* v. *State*, 271 Ark. 207, 608 S.W.2d 7 (1980); and *Mayes* v. *State*, 264 Ark. 283, 571 S.W.2d 420 (1978). Finally, we state that while some of the witnesses' testimony conflicted with that of other witnesses, the testimony was still admissible and its credibility was a

matter for the jury. Therefore, we do not find that the court abused its discretion in allowing the testimony as it related to the photographic and physical line-up identification process.

## IV. THE SUFFICIENCY OF THE EVIDENCE.

The appellant argues that since the evidence was all circumstantial, it did not rise to the level of proof required for conviction. The appellant correctly relied on *Ayers* v. *State*, 247 Ark. 174, 444 S.W.2d 695 (1969), for the proposition that when evidence is all of a circumstantial nature, every other reasonable hypothesis but the guilt of the accused must be ruled out. In determining the sufficiency of evidence to uphold a conviction we affirm if there is substantial evidence to support the jury's verdict. *Hutcherson* v. *State*, 262 Ark. 535, 558 S.W.2d 156 (1977). Circumstantial evidence alone may be sufficient to support a conviction. *Ayers* v. *State*, supra; *Yandell* v. *State*, 262 Ark. 195, 555 S.W.2d 561 (1977). The law makes no distinction between circumstantial evidence and direct evidence. *Williams* v. *State*, 258 Ark. 207, 523 S.W.2d 377 (1975). On appellate review it is sufficient if we consider only the evidence which is most favorable to the appellee. *Williams* v. *State*; *Chaviers* v. *State*, 267 Ark. 6, 588 S.W.2d 434 (1979). Indeed, we have previously upheld the conviction of a defendant for capital murder when the evidence was all circumstantial. *Cassell* v. *State*, 273 Ark. 59, 616 S.W.2d 485 (1981).

Some of the evidence presented in this case was the testimony of Chantina Ginn who testified that she lived with the appellant for several days prior to the commission of the crime in question and several days afterwards. She testified that she and Lorili Peterson spent several days at Lake Beaver with Richard Anderson and the appellant whom she knew as Damon Peterson. This witness testified that Damon and Rick left the encampment on Beaver Lake on September 9, 1980, and took with them a briefcase, wig, some rope and a change of clothes. The wig was described as being for a woman, curly, light brown, and falling about halfway to the neck. The two left on the motorcycle which

this witness and Richard Anderson had brought to Lake Beaver from Kansas about the first of September. Her testimony was that Rick and Damon returned about 10:00 p.m. on the fourth night after having left. Upon their return, they had two orange duffle bags filled with jewelry. All four of the parties kept different pieces of the jewelry. Damon and Rick later attempted the burn the price tags and identification boxes, some of which were recovered by the officers and introduced in evidence. Mrs. Staton identified some of the material as coming from the store where her daughter and husband had been murdered. At least one tag from the jewelry was found in a storage room in Fayetteville which had been rented by the appellant, according to witness Heckathorn. Linda Godwin identified the appellant as one of the men she saw in the immediate vicinity of the Staton jewelry store about the time the robbery occurred. Pat Etier testified that she met the appellant on September 9 outside the Wal-Mart store in Van Buren, Arkansas. She subsequently spent the night with him in her home. She had occasion to view him from head to foot with no obstructions. She positively identified him at the trial.

We are not unmindful that there was considerable evidence presented by alibi witnesses to the effect that the appellant was in Alabama at the time of the robbery and murder. However, as stated above, we consider only the testimony most favorable to appellee. Therefore, from a review of the record we find that there was substantial evidence to support the jury's verdict.

## V. THE COURT IMPROPERLY EXCLUDED A HYPOTHETICAL QUESTION BY APPELLANT'S ATTORNEY.

During the process of cross-examination of witness Linda Godwin defense counsel asked the following hypothetical question:

> If it were developed in the course of this trial that seven (7) people will testify under oath that Gene Perry was in Alabama at the time this occurred, would that change your testimony in any way?

The state objected on the following grounds:

That is assuming a fact that is not in evidence.

THE COURT: That is correct, that is not a proper question.

MR. SHARUM: Your Honor, we anticipate the evidence will be presented.

THE COURT: Well, you can anticipate what you may wish, but I don't believe that is a proper question. The court is overruling it.

Apparently, appellant did not proffer the answer and accepted the ruling of the court.

The matter has not been properly preserved for our consideration on appeal.

## VI. IT WAS ERROR TO EXCLUDE THE EVIDENCE OF DEFENSE WITNESS DR. DOUGLAS A. STEVENS.

Dr. Douglas A. Stevens, a clinical psychologist, testified on behalf of the appellant at the suppression hearing. His testimony was to the effect that the photographic line-up, as well as the physical line-up, was unduly suggestive and from a psychologist's viewpoint would cause the witnesses to identify the appellant even if they did not actually recognize him. We do not find any particular rules of evidence which control this issue. This exact question has not previously been presented to us. The trial court refused to accept this testimony at the suppression hearing and also excluded it from the trial in chief. We do not find any case from any jurisdiction directly on point. However, in *Smith* v. *State*, 258 Ark. 601, 528 S.W.2d 389 (1975), we held that it is well-established that the determination of an expert's qualification as a witness is within the sound discretion of the trial court and, absent an abuse of discretion, we do not reverse its decision. In a closely related factual situation we note the case of *Caldwell* v. *State*, 267 Ark. 1053, 594 S.W.2d 24 (Ark. App. 1980). In *Caldwell* our Court of Appeals held that the

testimony of a qualified expert in the field of human perception was properly rejected by the trial court on the grounds that such testimony would be an invasion of the purview of the duties of the jury. We hold that the expert testimony of Dr. Stevens was properly excluded.

## VII. THE COURT SHOULD HAVE ALLOWED EXPENSES FOR OUT OF STATE WITNESSES ON BEHALF OF THE APPELLANT.

Like many other issues this is a matter which lies within the sound discretion of the trial court and will not be reversed unless a manifest abuse of this discretion is shown. *Wright* v. *State,* 267 Ark. 264, 590 S.W.2d 15 (1979). We note that the court did allow unlimited depositions of out of state witnesses pursuant to Ark. Stat. Ann. § 43-2001 et seq. (Repl. 1977). The court had offered to allow the appellant to bring four witnesses from out of state to testify at the trial or to take the depositions of unlimited witnesses. The appellant chose the latter. We do not feel that the appellant has established that prejudice resulted from the trial court's denial of this request. *Butler* v. *State,* 264 Ark. 243, 570 S.W.2d 272 (1978). We recognize that the state often has available to it expense money and other resources which are not available to an accused. However, there has never been any guarantee that there will be equal amounts provided for both the defense and the prosecution. Apparently, all of the witnesses suggested by the appellant appeared at the trial with one possible exception. Therefore, we do not feel there has been a showing of prejudice.

## VIII. THE PROSECUTING ATTORNEY MADE IMPROPER ARGUMENT IN HIS CLOSING ARGUMENT.

It is insisted by the appellant that the prosecuting attorney made statements which amount to a comment on the right of the appellant to remain silent as guaranteed by the Fifth Amendment. The statement, which caused the case to be remanded for a settlement of the record, is stated as follows:

Obviously there is a lot of stuff being done here to

disguise the names of people. What name is given for Damon when he is down in Florida? Damon Malantino. Why was that name used? Who can tell. It is obviously one thing; it was not the name of Wallace Eugene Perry on any of this stuff. And why not? . . . You do not have eye witnesses. Nobody is going to come in here and say yes, I robbed, and I have shot. Whose fault is that? It's the defense's fault. There are no witnesses. You know, criminals are the ones that pick the witnesses for crimes, because criminals are the ones that decide the time and the place of the crime.

There was no objection at the time these remarks were made. The argument by the appellant is that this court should review and reverse, in the absence of objection, when the error is so great that the trial court was under a duty to correct it immediately and where no objection or admonition could have undone the damage or erased the effect of the error from the minds of the jurors. *Ply* v. *State,* 270 Ark. 554, 606 S.W.2d 556 (1980); *Smith* v. *State,* 268 Ark. 282, 595 S.W.2d 671 (1980).

The case was remanded for settlement of the record when the state argued that a portion of the above-quoted statement should have read:

Nobody is going to come in here and say yes, I've (been) robbed, and I have (been) shot.

The word "been" was not used by the state in the closing argument. Appellant argues the statements are comments on appellant's exercise of his right to remain silent. However, considering the total context of the closing argument, and the lack of an objection at the time of the trial, we are of the opinion that this was not a comment upon the right of the appellant to remain silent. We are not in a position to know how the statement was delivered, with what inflections and emphasis, and are not able to see how the jury perceived it. The trial court has a broad latitude of discretion in supervising and controlling arguments of counsel and its decisions are not subject to reversal unless there is manifest abuse of that discretion. *Parker* v. *State,* 265 Ark. 315, 578

S.W.2d 206 (1979). In the case before us we do not find that the failure to object reached the status required which demands that in the interest of justice this court consider the alleged error when no objection was made at the time the statements were made.

## IX. THE COURT ERRED IN ADMITTING STATE'S EXHIBIT NO. 64 OVER APPELLANT'S OBJECTION.

The appellant insists that Exhibit No. 64 (sets of fingerprint cards) should not have been introduced because it contained irrelevant and immaterial information which was highly prejudicial to the appellant. The card contained the signature of Damon Malantino and listed the alias of Damon Peterson. Direct and cross-examination testimony had presented evidence that Eugene Wallace Perry and Damon Malantino and Damon Peterson were one and the same person. Therefore, it was not error to allow the introduction of the exhibit showing different names and apparently the same fingerprints as those on the card of Eugene Wallace Perry. We think it is not necessary to quote any authority because this matter is so clearly admissible or at the very most within the sound discretion of the trial court.

## X. THE COURT ERRED IN FAILING TO GRANT A MISTRIAL ON ACCOUNT OF PREJUDICIAL NEWS REPORTS.

The appellant insists that certain television news coverage was prejudicial to his case. He alleges that the news reporter made erroneous statements which connected appellant with the "mafia" and alleged he intended to escape during the trial. When an argument is unsupported by either a statement of authorities or convincing evidence, the issue is precluded from consideration on appeal unless it clearly appears without further research that the argument is justified. *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977). This case falls within that category.

## XI. IT WAS ERROR TO ADMIT THE TESTIMONY OF WITNESS CHANTINA GINN.

During the testimony by this witness the state elicited from her the following:

Lorili asked Rick how he liked the way Damon worked, and Rick didn't make any reply.

When the above answer was given, a proper foundation had not been established. However, immediately, during the time appellant was objecting, the state elicited additional testimony from the witness that all four of them were present. The state's attorney asked a leading question and in effect testified. This was error but it was not prejudicial. Such matters are best handled by the trial court at the time of the improper statement or question. There was no request by the appellant to strike this testimony nor that the jury be admonished. Therefore, we will not consider it on appeal. *Gruzen* v. *State*, 267 Ark. 380, 591 S.W.2d 342 (1979).

## XII. THE COURT ERRED IN REFUSING TO SEQUESTER THE JURY.

It is insisted that it was error for the court to refuse the appellant's motion to sequester the jury during the trial, It is understandable that such a request was made, and we understand the reasons therefor. Ark. Stat. Ann. § 43-2121 (Repl. 1977) leaves it to the discretion of the trial court whether the jury will be sequestered. Such wide discretion will not be disturbed in the absence of a clear showing of prejudice. The appellant has not met the burden of showing that his trial was rendered unfair because of some outside influence on the jury. *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3 (1982).

## XIII. THIS COURT SHOULD MAKE A COMPARATIVE REVIEW OF THE APPELLANT'S DEATH SENTENCE WITH THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

The appellant insists that Richard Phillip Anderson, in a subsequent trial, received a life sentence upon conviction of first degree murder and therefore the appellant's sentence of death by electrocution should be reduced. We agree with

the appellant that we have agreed to review each sentence and compare it with other similar situations. *Collins* v. *State,* 261 Ark. 195, 548 S.W.2d 106 (1977). In *Collins* we stated that we were bound by the decision in *Furman* v. *Georgia,* 408 U.S. 238 (1972), to prevent any arbitrary or freakish use of the death penalty. We have compared the sentences of different appellants. *Sumlin* v. *State,* 273 Ark. 185, 617 S.W.2d 372 (1981). One reason we cannot compare appellant's case with that of Anderson is that Anderson's case has not been considered by this court. Another reason is that we compare death sentences with death sentences. *Swindler* v. *State,* 267 Ark. 418, 592 S.W.2d 91 (1979), or death sentences with life without parole sentences. *Swindler.* Upon comparison of both the sentence and the facts, we do not feel appellant's sentence should be reduced.

## XIV. THE APPELLANT SHOULD HAVE BEEN INDICTED BY A GRAND JURY RATHER THAN ANSWER TO AN INFORMATION.

This argument hardly requires a response. The appellant quotes the Constitution of Arkansas which allows a proceeding by indictment instead of by a grand jury. Due to the serious nature of this case we have again reviewed our cases on this subject and we find no need to change our prior decisions. Our opinions are supported by the Supreme Court of the United States in the case of *Gaines* v. *Washington,* 277 U.S. 81 (1928). For a typical case in which we dismissed this argument without discussion see *Ellingburg* v. *State,* 254 Ark. 199, 492 S.W.2d 904 (1973).

## XV. THE PHOTOGRAPHS WERE IMPROPERLY ADMITTED.

The appellant argues that exhibits 1 through 4, crime scene photographs, should not have been admitted into evidence. It is argued that the only purpose of such photographs was to inflame the passion and prejudice of the jury and that there was no probative value whatsoever in introducing the photographs. Photographs are admissible at the discretion of the trial court, and it does not matter that they are cumulative to other evidence. *Cotton* v. *State,* 276

Ark. 282, 634 S.W.2d 127 (1982). The photographs in the present case could have been helpful to the jury in understanding the testimony of witnesses in describing the scene as they found it after the murder. We do not find that these particular photographs are so highly prejudicial as to require their exclusion. *Rogers v. State*, 261 Ark. 293, 547 S.W.2d 419 (1977).

## XVI. THE COURT ERRED IN REFUSING TO GRANT A MISTRIAL.

On the second day of the trial, after the noon recess, an attorney from Georgia was present in the courtroom reading the local newspaper which carried a headline concerning the trial then in progress. It is argued the headlines were held in such a position that the jury could at least read the headlines. The headline on the newspaper stated: "Wife Identifies Staton Wedding Ring." The court initially refused to grant the mistrial and rejected appellant's request to voir dire the jury on the matter. Before the trial was over, however, the court realized the error and inquired of the jury concerning this event. No member of the jury admitted having seen the headline. As we have said many times, a mistrial is a drastic remedy lying within the trial court's discretion and the court's decision will not be reversed in the absence of a showing of abuse of discretion. *Hutcherson v. State*, supra. No such abuse was shown here.

## XVII. THE COURT ERRED IN FAILING TO DECLARE CHANTINA GINN AN ACCOMPLICE.

An accomplice is defined in Ark. Stat. Ann. § 41-303 (Repl. 1977):

(1) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, he:

(a) solicits, advises, encourages or coerces the other person to commit it; or

(b) aids, agrees to aid, or attempts to aid the other person in planning or committing it; or . . .

There is no evidence whatsoever in this case that Chantina Ginn did anything other than accept part of the loot after the crime was committed. She may have had reason to suspect that Rick and Damon were up to no good when they left Lake Beaver with a gun and a rope and other paraphernalia. Suspicion alone is not enough to make a witness an accomplice as a matter of law. *Johnson & Keeling* v. *State,* 259 Ark. 773, 536 S.W.2d 704 (1976).

## XVIII. IT WAS NECESSARY THAT CHANTINA GINN'S TESTIMONY BE CORROBORATED.

Appellant insists that witness Ginn was an accomplice as a matter of law. In the preceding point we have explained that she was not an accomplice as a matter of law. Appellant is correct that an accomplice's testimony is viewed with some skepticism and that is the reason that we require independent corroboration of an accomplice's testimony. Even if Chantina Ginn were an accomplice, the facts previously set out in this opinion conclusively show that there is independent evidence which tends to connect the appellant with the commission of the crime. *Olles & Anderson* v. *State,* 260 Ark. 571, 542 S.W.2d 755 (1976).

## XIX. ARKANSAS'S CAPITAL MURDER STATUTE IS UNCONSTITUTIONAL.

We have held numerous times that Ark. Stat. Ann. § 41-1501 (Repl. 1977), our death penalty statute, is constitutional. It was first held constitutional in *Collins* v. *State,* 261 Ark. 195, 548 S.W.2d 106 (1977), and one of the latest cases is *Ford* v. *State,* 276 Ark. 98, 633 S.W.2d 3 (1982).

## XX. THE TRIAL COURT ERRED IN ESTABLISHING JURORS' QUALIFICATIONS THROUGH PREJUDICIAL VOIR DIRE EXAMINATION.

We have attempted to discourage prolonged and confusing voir dire examinations of prospective jurors. *Haynes*

v. *State*, 270 Ark. 685, 606 S.W.2d 563 (1980). In *Haynes* we stated the purpose of selecting a jury is to obtain a panel which will be fair and impartial to the accused as well as to the state. Therefore, any questioning done by the court should be very carefully phrased in order to prevent the members of the jury from feeling that the court wants them to decide one way or the other. Usually, there are enough prospective jurors present to form a petit jury without the necessity of going to great length or prolonged voir dire in attempting to rehabilitate a prospective juror. We agree that the judge cannot step from the bench to the aid of either party and that he must not unfairly limit the right of either party to voir dire the prospective jurors. However, there must be an end to questioning at some time and as soon as it is evident that a juror is qualified or disqualified the questioning should stop. We recognize that members of the jury probably look to the trial judge with more respect than any other party before them. To them his word is the law. *West* v. *State*, 255 Ark. 668, 501 S.W.2d 771 (1973). The only objection preserved for argument appears to be against the seating of juror Ann Bolling. At one time she stated: "I think he should present his side of the story." She later stated she understood the state had the burden of proof. She was excused by the appellant. The burden is on the appellant to prove a juror's disqualification. *Beed* v. *State*, supra. We do not find anything in the abstract or argument to support the contention that the trial court exhibited prejudice or improperly rehabilitated any juror. Under these circumstances we do not find prejudicial error in this argument.

## XXI. THE TRIAL COURT ERRED IN QUALIFYING THE JURY FOR THE DEATH PENALTY.

Before the voir dire of the prospective jurors the appellant moved the court to prohibit the state from "death qualifying" the panel. The motion was overruled. After the jury was seated, and the appellant had used all his peremptory challenges, his motion was renewed and rejected by the court. Therefore, the jury, as empanelled, was what has become known as the "Witherspoon" or "death qualified" jury. We have a great number of cases rejecting the argument that a "death qualified" jury is more apt to

convict than a jury not so qualified. *Lasley* v. *State*, 274 Ark. 352, 625 S.W.2d 466 (1981); *Ruiz & Van Denton* v. *State*, 273 Ark. 94, 617 S.W.2d 6 (1981); and *Gruzen* v. *State*, 276 Ark. 149, 634 S.W.2d 921 (1982). We have held that it would be improper to select a jury panel which had agreed in advance to impose the maximum sentence. *Haynes* v. *State*, supra. On the other hand, we have stated that it was not error to excuse a venireman for cause when he unequivocally stated he could not vote for the death penalty. *Ruiz & Van Denton* v. *State*, supra. Therefore, we again hold that it is not error to select a jury which agrees in advance to consider the death penalty.

## XXII. OTHER ADVERSE RULINGS

We have searched the record in compliance with our Rule 11 (f) and A.R.Cr.P. Rule 36.24 and Ark. Stat. Ann. § 43-2725 (Repl. 1977) and find no errors prejudicial to the rights of the appellant which have not been discussed in this opinion.

Affirmed.