Marion Albert PRUETT v. STATE of Arkansas

CR 83-58                                    669 S.W.2d 186

Supreme Court of Arkansas
Opinion delivered April 30, 1984
[Rehearing denied June 18, 1984.]

*John W. Settle,* and *Garner Taylor, Jr.,* for appellant.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. This case comes to us on appeal from the Crawford County Circuit Court after a

change of venue from Sebastian County. The appellant was tried and convicted of capital murder and sentenced to death. For reversal he argues 21 separate points. However, we will consolidate the points and set them out in the body of this opinion. We do not find prejudicial error in any of the points argued.

The first seven points argued challenge the trial court's failure to grant a second change of venue and the selection of and failure to sequester the jury. The state did not oppose appellant's first motion for a change of venue. The court changed the site of the trial from Sebastian County to Crawford County. The change of venue was granted because of the extensive publicity surrounding this case. Voir dire of the jury commenced in Crawford County on August 27, 1982. Appellant's motion to sequester the jurors was denied. The trial court admonished the entire jury panel not to read or listen to or observe any news account of this case. The first panel was exhausted after five days. A supplemental panel was summoned and the appellant promptly moved to quash the supplemental panel because it had not received the admonition given to the original panel. The trial court denied the motion after a hearing. Appellant then moved for another change of venue and a continuance. These motions were denied by the court. After the appellant exhausted his peremptory challenges the jury was completed. The court overruled appellant's second motions to quash the jury panel and for a change of venue. The court rejected appellant's request to present evidence in support of these motions. It is undisputed that the appellant was forced to accept jurors he would have peremptorily challenged had he not exhausted those challenges. It is likewise undisputed that publicity was great in Crawford County as well as Sebastian County. However, the jury finally selected was qualified within the meaning of the *Witherspoon* doctrine. The purpose of a change of venue and voir dire of the jury is to insure that an accused receives a trial by a fair and impartial jury.

The first 11 jurors were selected from a 65 member panel. Eight members of the supplemental panel were examined before the twelfth juror was seated. The alternate

juror selected did not participate in the deliberations. Six jurors were excused for cause because they would automatically vote for the death penalty upon a finding of guilt on a capital murder charge. The court excused 26 jurors because of preconceived opinions of guilt or their knowledge about the case. Several were excused because of their relationship to the family of the victim or personal reasons. The number of jurors excused for cause by the trial court indicated that much publicity surrounded this case and that the court meticulously tried to select a fair and impartial jury. Of the 12 members who served on the jury only three had prior knowledge of the facts of the case. The court utilized individually sequestered voir dire in the jury selection process. This was another precaution which the trial court used to insure proper selection of a jury. The court went so far as to allow the striking of jurors who were already seated.

We have many times held that a change of venue lies within the discretion of the trial court. When it is determined that an accused can receive a fair and impartial jury trial the site of the trial is immaterial. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982). Also, the decision whether to sequester the jury lies within the discretion of the trial court and the burden of proving that appellant did not receive a fair and impartial trial, because of the failure to sequester the jury, is upon the appellant. *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3 (1982). We recognize that the bare statement of a prospective juror that he can give the accused a fair and impartial trial is subject to question. *Haynes* v. *State*, 270 Ark. 685, 606 S.W.2d 563 (1980).

The appellant's eighth assignment of error is the court's failure to grant a continuance. When the appellant was arraigned on June 14, 1982, he chose to represent himself. However, the court appointed counsel to stand by and advise the appellant. Appellant objected to the trial date set, August 30, 1982, contending that he needed to work on the appeal from his death sentence in Mississippi. Also, appellant's appointed counsel was then working on an appeal in another death case in that area. From the record we know that appellant's attorney, a public defender, is

swamped with work. However, we cannot appreciably slow the flow of the criminal justice system to accommodate overworked attorneys or judges. Another reason the appellant requested a continuance was that he was unable to discover the name of a physician whom he wanted to testify until after voir dire of the jury was completed. The primary reason stated in the motion for continuance was that, because of the foregoing facts, neither the appellant nor his counsel could be prepared to try the case on August 30, 1982. Perhaps it would have been better that the trial be continued for the reasons stated in the motions and due to the media attention given the case. However, such matters are addressed to the sound discretion of the trial court and we do not reverse unless that discretion is abused. *Prokos* v. *State,* 266 Ark. 50, 582 S.W.2d 36 (1979). The court attempted to cooperate in obtaining the presence of the witness; however, the witness was unable to appear at the time of the trial. The testimony of this witness was presented to the jury through statements of appellant's counsel. Therefore, no prejudice resulted.

The appellant challenges the death qualification of prospective jurors. We need not tarry on this argument as it was clearly answered in the case of *Rector* v. *State,* 280 Ark. 385, 659 S.W.2d 168 (1983).

Appellant's arguments 10 through 12 challenge the death penalty statute in Arkansas. The appellant filed a motion to quash the information, reduce the charge and reduce the penalty. All three motions were denied by the court. The argument that electrocution is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution was rejected in *Swindler* v. *State,* 267 Ark. 418, 592 S.W.2d 91 (1979). The argument that the overlapping provisions of Ark. Stat. Ann. § 41-1501 (Repl. 1977) and Ark. Stat. Ann. § 41-1502 are impermissibly vague was disposed of in *Ford* v. *State,* 276 Ark. 98, 633 S.W.2d 3 (1982). The court was correct in overruling these motions.

Appellant next argues that the trial court erred in refusing to suppress appellant's statement or to delete portions of it. A motion to suppress the statement made by

the appellant during a press conference in Mississippi on October 28, 1981, was denied. During the televised press conference he referred to himself as a "mad dog killer." This news conference was at the appellant's request after he stated to the officers that he knew more than they about his rights. In any event the news conference statement of October 28 was not introduced. An officer from Ft. Smith traveled to Mississippi on November 8, 1981, and secured a statement from the appellant. The officer first gave him his *Miranda* warnings. This statement was edited and introduced into the record. Appellant correctly argued that a custodial statement is presumed involuntary. *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975). There was conflicting testimony concerning the voluntariness of the appellant's custodial statement. The trial court found that the statement was voluntary and we will not set aside such a finding unless it is clearly against the preponderance of the evidence. *Degler* v. *State*, 257 Ark. 388, 517 S.W.2d 515 (1974).

It is argued that the court erred in refusing to suppress a firearm and bullets which were obtained by illegal search. The facts surrounding the search are as follows: When appellant was initially stopped for a speeding violation, he was unable to produce a driving license. He was then requested to show vehicle registration. He opened the door on the passenger side and looked into the glove compartment. An officer observed drug paraphernalia in the open glove compartment. He also observed a strap under the front seat which he recognized to be a part of a gun holster. The appellant was arrested for speeding, driving without a license, and possession of drug paraphernalia. The gun, which was in the holster, was a clear and present danger to the officers under the circumstances of this case. The drug paraphernalia was properly seized as it was clearly before the eyes of the officer. *Gatlin* v. *State*, 262 Ark. 485, 559 S.W.2d 12 (1977). We think the gun was within the "plain view" doctrine as enunciated in *Coolidge* v. *New Hampshire*, 403 U.S. 443 (1971) and *Gatlin* v. *State, supra*. Since we hold that the weapon and bullets were legally obtained it follows that the ballistics tests were proper evidence.

The appellant argues that the trial court improperly

refused to direct a verdict of acquittal. This motion amounted to a challenge of the sufficiency of the evidence. In view of our holdings concerning admission of evidence earlier in this opinion we think this argument does not have merit.

Appellant argues that the court erred in allowing the state to question him on cross-examination about details of his prior convictions. By a motion in limine appellant sought to curtail the cross-examination on the grounds that it was a conviction that impairs credibility. The unique argument is that the appellant could impeach his own credibility, pursuant to Unif. R. Evid., Rule 607, by merely acknowledging previous felony convictions. Appellant also argued that questions about prior convictions were more prejudicial than probative. The proper scope of cross-examination pursuant to Unif. R. Evid., Rule 609, is made on a case by case basis. *Smith* v. *State,* 277 Ark. 64, 639 S.W.2d 348 (1982). The better procedure to follow when prior convictions are involved is set out in *Simmons* v. *State,* 278 Ark. 305, 645 S.W.2d 680 (1983). In the present case the appellant made a closing argument in his own behalf and admitted killing the victim but denied responsibility due to intoxication. Under the facts and circumstances of this case we do not find that the trial court abused its discretion concerning impeachment by prior convictions. The jury was instructed concerning the defense of intoxication. The appellant objected to a portion of the instruction which stated: "Ordinarily, self-induced intoxication, whether by alcohol or drugs or other substances, is not a defense to prosecution. . . . The fact that a person was intoxicated at the time he allegedly committed an offense does not necessarily show that he was deprived of his mental abilities for a person may be intoxicated and at the same time, be able to form a purposeful intent." This instruction was a modification of AMCI 4005. Appellant argues that it was confusing and was a comment on the evidence. We do not agree with the contention of appellant that this amounted to a comment on the evidence in violation of the Constitution of the State of Arkansas, Article 7, Section 23. *Hill* v. *State,* 252 Ark. 345, 479 S.W.2d 234 (1972). The instruction was

proper since the appellant was alleging the affirmative defense of intoxication.

Appellant argues that a mistrial or admonition should have been granted when the prosecution asked a witness, "Do you put your patients under oath when you talk to them?" The witness was a clinical psychologist being cross-examined by the state. This occurred during the penalty phase of the trial. It is argued that the question amounted to a comment on the appellant's silence since the appellant did not testify in his own behalf during the first part of the bifurcated trial. Certainly it would be improper for the state to comment on the appellant's decision not to testify. *Evans* v. *State,* 221 Ark. 793, 255 S.W.2d 967 (1953). When a comment about an accused's silence is made before a jury by the prosecution a mistrial is proper. Prejudice is presumed in such cases. *Adams* v. *State,* 263 Ark. 536, 566 S.W.2d 387 (1978). This statement may have been prejudicial had it been made during the guilt or innocence stage of the trial. However, the statement could not have in any way contributed to the verdict of guilt in this case. *Weaver* v. *State,* 271 Ark. 853, 612 S.W.2d 324 (Ark. App. 1981). The court is in a position to note the manner of delivery of such statements and the inflections or emphasis used and is therefore in the better position to understand how the jury perceived it. *Perry* v. *State,* 277 Ark. 357, 642 S.W.2d 865 (1982). We do not think it was prejudice to deny a mistrial or admonition during the penalty phase of the trial. Such statements should be avoided in the future.

The appellant contends the court erred in refusing an instruction during the penalty stage of the trial and that the death sentence verdict was based on passion and prejudice. The rejected instruction was to the effect that if he were sentenced to life without parole he would serve the rest of his life in prison. We have many times held that the trial court should not attempt to explain matters concerning parole or executive clemency to a jury. *Andrews* v. *State,* 251 Ark. 279, 472 S.W.2d 86 (1971). We are unable to find any evidence in the record to reflect that the verdict in this case was the result of passion and prejudice.

Also, it is contended that, by comparison to other capital cases, the appellant should be sentenced to life without parole. Even though we are not required by law or precedent to make a comparison of sentences we have done so in this case and do not find that the death verdict should be set aside in this case.

In accordance with the provisions of Ark. Stat. Ann. § 43-2725 (Repl. 1977) and Rule 11 (f) of this court, we have reviewed the transcript and find no ruling adverse to the appellant which resulted in prejudicial error.

Affirmed.

ADKISSON, C.J. and HICKMAN, J., concur.

HOLLINGSWORTH, J., dissents.

RICHARD B. ADKISSON, Chief Justice, concurring. "If the testimony supports the conviction for the offense in question and if the sentence is within the limits set by the legislature, we are not at liberty to reduce it even though we may think it to be unduly harsh." *Osborne* v. *State*, 237 Ark. 5, 371 S.W.2d 518 (1963). See also, *Miller* v. *State*, 230 Ark. 352, 322 S.W.2d 685 (1959) and *Hall* v. *State*, 113 Ark. 454, 168 S.W. 1122 (1914). Although this is not an inexorable rule, it is the accepted rule of law in this state. *Roberts* v. *State*, 281 Ark. 218, 663 S.W.2d 178 (1984).

Anticipating that the United States Supreme Court would require comparison of sentences in death cases pursuant to the Eighth Amendment, this Court agreed to compare sentences in such cases. *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1977), *cert. denied*, 434 U.S. 878 (1977). However, the United States Supreme Court held otherwise in *Pulley, Warden* v. *Harris*, No. 82-1095 (Jan. 23, 1984), stating that the Eighth Amendment of the United States Constitution does not require an appellate court to compare death sentences with penalties imposed in similar cases.

Therefore, this Court should now revert to its long established position as reflected in *Osborne* and refuse to

compare or reduce sentences absent some constitutional infraction.

DARRELL HICKMAN, Justice, concurring. This concurrence is addressed to the suggestion that we abandon comparative review in death cases.

In *Collins* v. *State*, 261 Ark. 195, 548 S.W.2d 106 (1972), cert. denied 434 U.S. 878 (1978), we took upon ourselves the obligation to review death sentences comparatively. Comparative review was not required by Arkansas law but was done to insure that the death sentence in Arkansas would not be freakishly imposed. That procedure has been used to reduce several sentences of death to life without parole. *Henry* v. *State*, 278 Ark. 478, 647 S.W.2d 419 (1983); *Neal* v. *State*, 274 Ark. 217, 623 S.W.2d 191 (1981); *Sumlin* v. *State*, 273 Ark. 185, 617 S.W.2d 372 (1981).

It is suggested that because the United States Supreme Court has ruled that the constitution does not require a comparative review, we should abandon the practice. Such a break would be a breach of faith by this court and would remove a check against the arbitrary and capricious imposition of the death penalty. In my judgment, the laborious and serious effort this court has made in reviewing death sentences to insure that decisions of the United States Supreme Court are followed will eventually work to the good of Arkansas and its legal system. When we approve a death sentence, it receives every consideration, not just a rubber stamp approval, and by all rights a great majority of our decisions should withstand scrutiny by other courts that use any reasonable standard of review. If we abandon our standards in the least, we stand to lose some credibility. In any event, we have our duty and responsibility regardless of what other courts may do.

Some thirty states use some form of comparative review. *Pulley* v. *Harris*, ___ U.S. ___ (Jan. 23, 1984) (Brennan, concurring). A study of all the opinions in *Pulley* indicates it is a desirable practice. We should not consider reneging on our obligation.

DUDLEY, J., joins in this concurrence.

P. A. HOLLINGSWORTH, Justice, dissenting. I agree with appellant's argument that the trial court erred in denying his motion challenging the death qualification of prospective jurors. I disagree with the majority's holding in *Rector* v. *State*, 280 Ark. 385, 659 S.W.2d 168 (1983). In my view the appellant had a right to prove that death-qualified jurors are more prone to conviction than jurors who are not so qualified, and to further prove that the jury in this case was so qualified. *Grigsby* v. *Mabry*, 569 F. Supp. 1273 (E.D. Ark. 1983).